*262 OPINION OF THE COURT
Robert S. Kreindler, J.
Defendant moves to dismiss counts 1 to 7, charging advertisement of sale of unauthorized recordings in the first degree (two counts), advertisement or sale of unauthorized recordings in the second degree, failure to disclose the origin of a recording in the second degree and criminal possession of a forged instrument in the third degree (three counts), on the grounds that Penal Law §§ 275.25, 275.30, 275.35 and 170.20 have been preempted by Federal law (17 USC § 301).
The evidence indicates that the defendant is the owner of three video stores. As a result of the execution of a search warrant at these stores, it was determined that the defendant had 800 to 900 unauthorized recordings of videocassettes.
Courts should not strike down a statute as unconstitutional unless such a statute clearly violates the Constitution (Matter of Van Berkel v Power, 16 NY2d 37; see, McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [a]). Statutes are presumed valid and constitutional and the one challenging the statute has the burden of showing the contrary beyond a reasonable doubt (People v Pagnotta, 25 NY2d 333). Every presumption will be indulged to support and sustain legislation and it will be assumed that the Legislature intended to enact a statute which is in harmony with the Federal and State Constitutions. This presumption applies to preemption claims when the statute in question is an exercise of a police power (People v Pymm, 76 NY2d 511).
The Supremacy Clause of the United States Constitution (US Const, art VI, cl [2]) invalidates State laws that "interfere with, or are contrary to” Federal law (Gibbons v Ogden, 9 Wheat [22 US] 1, 211). In deciding whether Federal law preempts a State statute, congressional intent in enacting the Federal statute at issue must be ascertained (see, Shaw v Delta Air Lines, 463 US 85).
The United States Constitution confers upon Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their * * * Writings and Discoveries” (US Const, art I, § 8 [8]). This is known as the "Copyright Clause”. At the Constitutional Convention, James Madison stated that the objective of the Copyright Clause was to facilitate the granting of rights "national” in scope (see, Goldstein v California, 412 US 546, 556; HR Rep No. 94-1476, 94th Cong, 2d Sess *263 129, reprinted in 1976 US Code, Cong & Admin News 5659, 5745, 5746).
The framers of the Constitution recognized that in order to encourage people to foster artistic and creative undertakings, the Constitution must vest Congress with the power to guarantee to authors and inventors a reward in the form of control over the commercial use of copies of their works (Goldstein v California, supra, at 556). Congress was given this power in order to promote national uniformity and to avoid the practical difficulties of determining and enforcing an author’s rights under differing laws and in separate jurisdictions (Goldstein v California, supra, at 556).
If some States do not offer copyright protection, while other States do, the economic value of the owner’s copyright will be diminished. An infringer can go to a State which does not protect the author and infringe in that State. This would discourage authors and inventors from creative endeavors. Hence, Congress has consistently used its power over copyright by enacting laws protecting maps, charts and books (L 1790, ch 15, 1 US Stat 124), engravings, etchings and prints (L 1802, ch 36, 2 US Stat 171), photographs and negatives (L 1865, ch 126, 13 US Stat 540), paintings, drawings, statuettes and designs in fine art (L 1870, ch 230, 16 US Stat 198), motion pictures (L 1912, ch 356, 37 US Stat 488) and sound recordings (L 1971, Pub L No. 92-140, 85 US Stat 391, now codified as 17 USC § 102). The objective of these enactments was to protect the public welfare through encouragement of the talents of authors and inventors in the science and useful arts (Mazer v Stein, 347 US 201, 219).
Whether it was Congress’ intent to preempt State law of copyright regulation can be determined in 1 of 3 ways (see generally, People v Pymm, 76 NY2d 511, supra). First, Congress can expressly preempt State law by so stating in express terms (Jones v Rath Packing Co., 430 US 519). Second, congressional intent to preempt State law in a particular area may be inferred where the scheme of Federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room” for supplementary regulation, or because the " 'object sought to be obtained by the federal law and character of obligations imposed by it may reveal the same purpose’ ” (Fidelity Fed. Sav. & Loan Assn, v De la Cuesta, 458 US 141, 153, quoting Rice v Santa Fe El. Corp., 331 US 218, 230). Finally, State law will be preempted by Federal law to the extent that it actually conflicts with *264 Federal law (see, Pacific Gas Elec. v State Energy Resources Conservation & Dev. Commn., 461 US 190, 203-204). A conflict arises if State law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress” (Hines v Davidowitz, 312 US 52, 67).
Congress used its supremacy in the copyright field to promulgate the Copyright Revision Act of 1976 (Act). Part of the 1976 revision was 17 USC § 301. Congress, in enacting 17 USC § 301, expressed its intent as follows: "By substituting a single Federal system for the present anachronistic, uncertain, impractical and highly complicated dual system [section 301] would greatly improve the operation of copyright law and could be much more effective in carrying out the basic constitutional aims of uniformity and the promotion of writing and scholarship * * * [the principles of preemption would] be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of [the] unqualified intention * * * [to] act preemptively, and to avoid the development of any vague borderline areas between State and Federal protection” (HR Rep No. 94-1476, 94th Cong, 2d Sess 129, reprinted in 1976 US Code, Cong & Admin News 5659, 5745, 5746).
17 US § 301 is entitled "Preemption with respect to other laws”. Subdivision (a) reads as follows: "(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 * * * in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 * * * whether created before or after that date and whether published or unpublished, are governed exclusively by this title * * * Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State” (emphasis supplied).
This section creates a two-part test for determining preemption. A State regulation or statute is preempted (1) if the right is "equivalent” (id., § 301 [a]) to any of those exclusive rights "within the general scope of copyright” that are provided by the Act, and (2) if it applies to work of authorship "within the subject matter of copyright” (id., § 301 [a]) as defined in the Act (Harper & Row, Publs, v Nation Enters., 501 F Supp 848; Ippolito v Ono-Lennon, 139 Misc 2d 230, 235).
"Equivalent” rights are rights related to reproduction, de *265 rivative work preparation, distribution, performance or display. If other elements are required by the State statute the right does not lie "within the general scope of copyright” (17 USC § 301 [a]) and there is no preemption (see, Mayer v Wedgwood & Sons, 601 F Supp 1523, 1535; Nimmer, Law of Copyright § 1.01 [B] [3]).
However, a claim or statute that relates to rights equivalent to any of the exclusive rights within 17 USC § 106 cannot be disguised by the title or the nature of the action or statute. If the statute is in reality a copyright statute, it will be deemed "equivalent” (see, Editorial Photocolor Archives v Granger Collection, 61 NY2d 517, 523).
Only if an "extra element” would change the nature of the action or statute making it "qualitatively” different from a copyright infringement-type activity and distinguishing the underlying rights from those addressed by copyright law will it not be deemed "equivalent” (Mayer v Wedgwood & Sons, 601 F Supp 1523, 1535, supra).
Count 3 of the indictment alleges that defendant advertised or sold unauthorized recordings. Penal Law § 275.25, as is relevant, reads: "A person is guilty of the advertisement or sale of unauthorized recordings in the second degree when such person knowingly advertises, offers for sale, resale, rental, or sells, resells, rents, distributes or possesses for any such purpose, any recording that has been produced or transferred without the consent of the owner”.
Counts 1 and 2 allege that defendant committed the crime of advertisement or sale of unauthorized recordings in the first degree.
Penal Law § 275.30 provides in relevant part:
"A person is guilty of the advertisement or sale of unauthorized recordings in the first degree when such person commits the crime of advertisement or sale of unauthorized recordings in the second degree as defined in section 275.25 of this article and * * *
"2. commission of that crime involves * * * at least one hundred unauthorized audiovisual recordings.”
The gravamen of the People’s indictment is that the defendant rented to the public unauthorized recordings of videocassettes without the copyright owner’s consent. The actus res element focuses on "sale, resale, rental * * * sells, resells [or] rents” (Penal Law § 275.25). The actus res element is identical *266 to that afforded under 17 USC § 106. That Federal statute states:
"the owner of copyright * * * has the exclusive rights to
"distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending.” (17 USC § 106 [3].)
Penal Law §§ 275.25 and 275.30 do not contain any "extra elements” which would take it out of a copyright infringement claim. Differing mens rea elements, such as "awareness” or "intent” will not provide the "extra element” to take it out of a copyright infringement claim (Mayer v Wedgwood & Sons, 601 F Supp 1523, 1535, supra).
The element of "advertisement” for sale is also not an "extra element” that would qualitatively change the statute. Advertisement is a precursor to the sale or rental. It is a method to facilitate or attract customers for a sale or rental. The statute does not contain an element of misrepresentation or falsehood regarding the advertisement (see, Nash v CBS, Inc., 704 F Supp 823, 833, 835). As such, an honest advertisement regarding the videotapes is covered by this criminal statute. Even where the consumer has accurate information, the statute is violated. It cannot therefore be a consumer protection statute. It is hard to understand how the consumer is hurt by truthful advertising, or offers to sell.
The documents submitted as indicating legislative intent do not address the individual sections of Penal Law article 275. There may be and, as the court will later find, there is a section in article 275 that is a consumer protection statute.
Penal Law §§ 275.25 and 275.30 deal exclusively with distribution and prohibit matters related to distribution. They are "equivalent” rights.
As to the second part of the test created by 17 USC § 301, only 17 USC § 102 is pertinent. This section states, in relevant part:
"(a) Copyright protection subsists, in accordance with this title * * * in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following catagories * * *
"(6) motion pictures and other audiovisual works * * *
"(7) sound recordings.”
*267 The videocassettes at issue are clearly within the Federal subject matter of copyright under section 102 (a) (6) (see, Ippolito v Ono-Lennon, 139 Misc 2d 230, 235, supra; United States v Moran, 757 F Supp 1046).
The second element of section 301 is made out.
Section 301 (b) contains certain exceptions to Federal preemption. This section reads as follows:
"(b) Nothing in this title * * * annuls or limits any rights or remedies under the common law or statutes of any State with respect to—
"(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103 * * * including works of authorship not fixed in any tangible medium of expression; or
"(2) any cause of action arising from undertakings commenced before January 1, 1978; or
"(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 * * * or;
"(4) State and local landmarks, historic preservation, zoning or building codes, relating to architectural works protected under section 102 (a) (8)”.
As to subdivision (b) (1), this court has already ruled that videocassettes are within the subject matter of copyright. As to subdivision (b) (2), the Grand Jury minutes reflect that the alleged crime was committed after January 1, 1978. As to subdivision (b) (3), the court has ruled that the New York statutes contain "equivalent” rights. As to subdivision (b) (4), it is not relevant.
Section 301 (c) contains additional exceptions. The Grand Jury minutes show that these audiotapes were clearly "fixed” after February 15, 1972. Thus, the exception in section 301 (c) is inapplicable.
Penal Law §§ 275.25 and 275.30 as applied in this instance are within the purview of 17 USC § 301 and are preempted by explicit congressional enactment.
Penal Law § 275.35, failure to disclose the origin of a recording in the second degree, and section 170.20, criminal possession of a forged instrument in the third degree, require a different analysis.
Penal Law § 275.35 provides as follows: "A person is guilty of failure to disclose the origin of a recording in the second *268 degree when, for commercial advantage or private financial gain, he knowingly advertises or offers for sale, resale, or rental, or sells, resells, or rents, or possesses for such purposes, a recording the outside cover, box, or jacket of which does not clearly and conspicuously disclose the actual name and address of the manufacturer and the name of the performer or principal artist.”
The focus of Penal Law § 275.35 is on labelling or packaging. The crucial element is that the carton or outer container holding the recording be in deceptive condition. This statute does not require the defendant to infringe the rights of the copyright owner. This statute can be violated even if the transferor has permission and authority to sell the recording from the copyright owner if the labels or packages are deceptive. The required element is that the cover, box or jacket does not clearly and conspicuously disclose manufacturer information. This is an "extra element” that makes the statute "qualitatively” different from a copyright infringement claim. The rights being affected are not "equivalent” rights "within the general scope of copyright”. Although distribution is an element of this statute, this is an additional element which takes it out of a copyright infringement statute.
Furthermore, the right protected in a copyright infringement claim is the owner’s property rights in his intellectual endeavors, while Penal Law § 275.35 is aimed at protecting the rights of consumers. Failure to disclose the origin of a recording is a consumer protection statute enacted to protect the public from purchasing under a false belief (see, People v M&R Records, 106 Misc 2d 1052, 1057).
In addition, this court has reservations whether "labels” or "packaging” are within the subject matter of copyright under 17 USC §§ 102 and 103.
Penal Law § 275.35 is not covered by 17 USC § 301 (see, Nash v CBS, Inc., 704 F Supp 823, 835, supra).
Penal Law § 170.20 provides as follows: "A person is guilty of criminal possession of a forged instrument in the third degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses a forged instrument.”
Penal Law § 170.20 focuses on the falsity of an instrument. The required element that there be a "forged instrument” deals with any instrument in general, not specifically an instrument that is copyrightable. Standing alone the fact that *269 the copyrighted labels were forged does not in and of itself make this penal law a copyright infringement statute (see, People ex rel. Calderon v Russi, 182 AD2d 794).
These counts are essentially a false labelling activity which seek to protect the consumer from fraud, section 301 is not intended to preempt such a common-law protection even where the subject matter involved comes within the scope of the copyright statute (see, Meyers v Waverly Fabrics, 65 NY2d 75, 78).
Penal Law § 170.20 is not preempted by 17 USC § 301.*
The second way congressional intent is determined is whether the scheme of Federal regulation is sufficiently comprehensive to leave "no room” for supplementary State legislation (Rice v Sante Fe El. Corp., 331 US 218, supra). Federal copyright law covers eight chapters: chapter 1 — subject matter and scope of copyright; chapter 2 — copyright ownership and transfer; chapter 3 — duration of copyright; chapter 4 — copyright notice, deposit and regulation; chapter 5 — copyright infringement and remedies; chapter 6 — manufacturing requirement and importation; chapter 7 — copyright office; and chapter 8 — copyright royalty tribunal.
Congress has dealt with copyright infringement both civilly and criminally (see, 17 USC § 506). By so legislating, Congress has addressed both individual and societal interests in copyright protection. Thus, congressional intent was not only to cover the civil aspect but the criminal aspect also (see, Dowling v United States, 473 US 207, 222).
In addition, where civil preemption exists there is also preemption of criminal statutes (see, Navarro v Federal Paper Bd. Co., 185 AD2d 590).
However, the broadness of the Federal copyright law does not cover the consumer protection statutes, only the copyright owner’s individual rights. Consumer protection legislation is reserved to the State.
Thus, under the second criteria Penal Law §§ 275.25 and 275.30 are preempted but sections 275.35 and 170.20 are not.
The third way of determining if a State regulation or statute is preempted is if it conflicts with the purpose and objective of the Federal act (Hines v Davidowitz, 312 US 52, *270 67, supra; People v Pymm, 76 NY2d 511, 520, supra; People v Shapiro, 50 NY2d 747, 763). The purpose of Federal control over copyright law was to foster creative endeavors of authors and inventors. The objective of the revised Copyright Act of 1976 was to provide national and uniform application of copyright laws (see, Goldstein v California, 412 US 546, supra).
If a State had jurisdiction it could authorize regulations effecting the objective of copyright laws. States could enact particular civil or criminal copyright laws that Congress did not intend to civilly or criminally prohibit or punish. This would conflict with the stated goal of national uniformity.
In addition, Penal Law §§ 275.25 and 275.30 mandate that a defendant act only "knowingly”. A person acts "knowingly” with respect to conduct or to a circumstance described by a statute defining an offense, when he is aware that his conduct is of such nature or that such circumstance exists (Penal Law § 15.05).
The Federal criminal statute, 17 USC § 506, requires a person to act "willfully”. This is a specific intent requirement. The lower threshold required by Penal Law §§275.25 and 275.30 would indeed criminalize something Congress did not criminalize, and stand as an obstacle to Congress’ objective of national uniformity in copyright law.
However, no conflict exists with respect to Penal Law §§ 275.35 and 170.20 because they are not copyright infringement statutes by nature and have no effect on the congressional objective of national uniformity of copyright law.
In conclusion Penal Law §§ 275.25 and 275.30, as applied in this case, are preempted by Federal regulation (People v Greenfield, 1982 WL 11230 [Sup Ct, NY County, Nov. 16, 1982, Dontzin, J.]). Penal Law §§ 275.35 and 170.20 are not related to rights that are "equivalent” to any of the exclusive rights within the general scope of copyrights, and are not preempted.
Counts 1, 2, and 3 are dismissed as preempted by Federal statute.
This court has previously dismissed count 8.
Counts 4, 5, 6 and 7 are valid. The motion to dismiss those counts is denied.

It should be noted that the subject matter of these counts are not the videotapes. To the degree that defendant seeks to relitigate this court’s decision of June 3, 1992 on the legal sufficiency of the Penal Law § 170.20 count, a motion to reargue is the only appropriate method.