Argued and submitted April 29, 2011, affirmed August 29,
petition for review allowed April 11, 2012 (353 Or 445)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## STEVEN BRADLEY WALKER,
*Defendant-Appellant.*

Clatsop County Circuit Court
091089; A142712

285 P3d 751

Erica Herb, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Justice J. Rillera, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Edmonds, Senior Judge.

HASELTON, C. J.

Edmonds, S. J., dissenting.

## HASELTON, C. J.

After a jury trial, defendant was convicted of racketeering, ORS 166.720(3),[1] based on three incidents in which defendant and another man stole various items from two Safeway grocery stores, and theft in the first degree, ORS 164.055, based on one of those incidents. Defendant appeals only the conviction for racketeering, assigning error to the trial court's denial of his motion for judgment of acquittal (MJOA). Defendant argues that the state failed to adduce sufficient evidence that, in committing the series of thefts, he participated in an "enterprise," as defined in the Oregon Racketeering Influenced and Corrupt Organizations Act (ORICO), ORS 166.715 - 166.735. We affirm for reasons explained below.

In reviewing the denial of an MJOA, we determine whether, viewing the evidence and reasonably derived inferences from that evidence in the light most favorable to the state, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998).

The uncontroverted historical facts are as follows. On February 8, 2009, defendant and another man, Williams, entered a Safeway store in Sandy. A security camera recording revealed that both men placed various items into their shopping carts—including disposable diapers, Tide laundry detergent, beer, and frozen shrimp—and then left the store without paying for the items. Approximately two weeks later, on February 23, 2009, defendant and Williams returned together to the same Safeway store in Sandy and again each stole disposable diapers, Tide laundry detergent, and beer.

On March 26, 2009, defendant and Williams traveled together to a Safeway store in Seaside. A store security guard observed Williams pushing a shopping cart that contained diapers, Tide laundry detergent, beer, and several

---

[1] ORS 166.720(3) provides:

"It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt."

bags of frozen shrimp. The guard also watched as defendant selected nine bags of frozen shrimp from the seafood freezer and then walked to a different aisle where he placed the freezer bags into plastic Safeway shopping bags. Defendant then walked out of the store without paying. The guard followed defendant into the parking lot and saw defendant put the shopping bags into a car. The guard yelled out to defendant, and defendant fled on foot. During that time, Williams had abandoned his cart full of merchandise at the front of the store and had also left the scene.

The Seaside police arrived and searched the unlocked car, where they discovered that defendant had thrown the bags of shrimp atop a stash of diapers, Tide laundry detergent, beer, and beef jerky. The items were returned to the store, and the police impounded the car. Shortly thereafter, the police located and arrested Williams, who was the registered owner of the vehicle. After Williams consented to a search of the car, the police opened the trunk and found more diapers, beer, and frozen shrimp. Williams denied stealing most of the items but admitted to taking "only eight bags of frozen shrimp," which he told the interviewing officer that he had intended to "consume * * * on the beach."

Meanwhile, defendant called 9-1-1 to inquire about the status of the car and its owner. Defendant claimed that he was calling from Portland, but the call was automatically traced back to a hotel in Seaside, where police officers subsequently apprehended him. During the ensuing police interview, defendant confessed that he and Williams had traveled together to Seaside for the day and that the men had taken items from the Seaside Safeway. However, defendant denied stealing items worth more than $750 total, because, he said, "that would be a felony." Defendant also admitted that he and Williams had "been involved in these types of thefts in the Portland area" during "the last two months."

The state charged defendant with racketeering, ORS 166.720(3), based on the Seaside Safeway theft and the two previous Sandy Safeway thefts. At trial, defendant moved for a judgment of acquittal, arguing that the state had failed to establish that, in committing the thefts, he had

participated in an "enterprise" in violation of ORICO. In that regard, defendant framed and phrased his challenges to the sufficiency of the state's proof explicitly and exclusively by reference to the formulation pronounced in the lead opinion in *State v. Cheek*, 100 Or App 501, 505, 786 P2d 1305, *rev den*, 310 Or 121 (1990) ("[P]roof of an enterprise, as defined by ORS 166.715(2), must include proof of an on-going organization, however loose, that is distinct from the commission of separate criminal acts by an individual.").[2] Specifically, defendant argued:

"[I]t's actually the *Cheek* case in which they say the State has to prove simply beyond co-defendants committing multiple crimes together in order to establish an enterprise.

"* * * * *

"The evidence * * * is that they enter stores at approximately the same time, but at no time did they interact with one another in the store, at no time did they seem to be, you know, passing information off to one another, those kinds of things. So even if the State has established that they're co-defendants, I'm not sure that the State has established that this is an enterprise as that term is defined by the racketeering cases.

"I think at the very best they've established that these are co-defendants who committed multiple crimes together[.]

"* * * * *

"What we've got is two individuals who are shoplifters, that's what this case boils down to. And so I think that the Court should find that under *Cheek*, the State has not met its burden with regard to an enterprise[.]"

The state, in responding, also invoked the *Cheek* formulation:

"[S]tarting with the enterprise, I'd also point out that *Cheek* says that it's a level of organization, however loose, that these two people are committing crimes together. In this

---

[2] The lead opinion, authored by Judge Edmonds, adopted and applied that construct in addressing the defendant's assignment of error to the denial of a motion for judgment of acquittal. *Cheek*, 100 Or App 501. Judge Graber, who dissented with respect to the disposition of an assignment of error pertaining to the failure to give a requested jury instruction, agreed that the trial court had properly denied the MJOA. *Id.* at 511 n 4 (Graber, P. J., dissenting).

situation we don't have a—we don't have two defendants who are committing random crimes together, we have two defendants who are basically in the business of going out and stealing items together; they have a certain MO, they're stealing the same type[s] of items every single time, they're actually stealing from the same store chain every single time.

"We also have the fact that defendant told the officers that he and Mr. Williams had been involved in these thefts for about two months and that they had committed [such crimes] in the Portland area as well. So [defendant was] definitely involved in this enterprise for this purpose of racketeering activity."

The court denied the MJOA, reasoning as follows:

"The problem is I don't think *State v. Cheek* is really helpful to defendant because it seems to me that [the lead opinion] seems to have a pretty loose definition, saying you need an enterprise, which would be the two people involved or allegedly [defendant] and Mr. Williams, kind of going around in a loose organization or an enterprise or whatever you want to call it, and committing different crimes at the same—or at least at the Safeway stores, not the same store, but the Safeway chain stores."

Thereafter, at defendant's request, the court instructed the jury on the meaning of "enterprise" in language that tracked the *Cheek* formulation verbatim:

"There must be proof of both an enterprise and a pattern of racketeering [activity] which is [']aimed at criminal activity that originates from a sense of organization.['] In other words, there must be [']proof of an ongoing organization, however loose, that is distinct from the commission of separate criminal acts by an individual.[']"

(Quoting *Cheek*, 100 Or App at 505.) The jury subsequently found defendant guilty of racketeering and of one count of first-degree theft.

On appeal, defendant argues that the trial court erred in denying his MJOA with respect to the purported insufficiency of the state's proof as to the existence of an

"enterprise," within the meaning of ORS 166.720(3) and ORS 166.715(2), with which he was associated.[3] While again framing his challenge primarily by reference to the *Cheek* formulation, defendant also suggests that we should refer to *Boyle v. United States*, 556 US 938, 129 S Ct 2237, 173 L Ed 2d 1265 (2009)—which issued *after* defendant's trial (and, hence, after the argument and disposition of the MJOA)—as "useful gloss." In *Boyle*, the United States Supreme Court held, *inter alia*, that an "associated-in-fact enterprise" under federal RICO statutes must have "an ascertainable structure" with "at least three structural features": (1) purpose, (2) relationship, and (3) longevity. 556 US at 946.

The state responds that the trial court correctly denied defendant's MJOA because a rational trier of fact could infer that defendant and his codefendant, Williams, "had formed an informal partnership * * * that lasted for at least two months" directed toward the common and continuing purpose of "stealing specific 'high dollar' merchandise at Safeway stores[.]"

Before we reach the merits of the parties' arguments, we first clarify the precise issue that is before us in this case. The sole question that we address is whether, under the formulation of "enterprise" prescribed in the then-extant ORICO decisions—that is, the formulation on which the jury was ultimately, at defendant's request, instructed—the state's evidence was legally sufficient to establish an "enterprise" within the meaning of ORS 166.715(2) and ORS 166.720(3). Given the posture of this case and concomitant prudential constraints, we neither express nor imply any view as to the possible modification or refinement—by "gloss" or otherwise—of the *Cheek* formulation in other circumstances particularly, or generally. *Boyle*—which was decided after the denial of the MJOA and which, of course, addressed federal RICO—is apposite only to the extent, if any, that we deem its analysis to be analogously informative with respect to matters fairly encompassed and raised by defendant's MJOA predicated on *Cheek*.

---

[3] Defendant does not contest that the series of thefts constituted a "pattern of racketeering activity" for purposes of culpability under ORS 166.720(3).

We turn, then, to the legal sufficiency of the state's proof of "enterprise." We begin with an overview of the operative text and, as instructive, our precedents amplifying the contours and content of "enterprise" within the meaning of the ORICO statutes.

ORS 166.720(3) provides, in pertinent part:

> "It is unlawful for any person employed by, or associated with, *any enterprise* to conduct or participate, directly or indirectly, in such *enterprise* through a pattern of racketeering activity * * *."

(Emphases added.) Thus, to establish culpability under ORS 166.720(3), "the state [must] prove both a pattern of racketeering activity and an enterprise." *Cheek*, 100 Or App at 505. Further, as we elaborate below, although those elements are distinct and proof of the former will not *necessarily* establish the latter, proof of the former can be probative of the latter, *id.*—and, indeed, in some circumstances proof establishing a "pattern of racketeering activity" can, with reasonably derived inferences, be *sufficient* to permit and support the requisite finding of "enterprise." *Accord United States v. Turkette*, 452 US 576, 583, 101 S Ct 2524, 69 L Ed 2d 246 (1981) (explaining that, under federal RICO statutes, the proof used to establish the pattern of racketeering activity and the existence of an enterprise "may in particular cases coalesce").

ORS 166.715(4) defines "[p]attern of racketeering activity":

> "'Pattern of racketeering activity' means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise * * *."

Under ORS 166.715(6)(a), in turn, "'[r]acketeering activity' * * * means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce or intimidate another person to commit * * * [a]ny conduct that constitutes a crime" as specifically defined in ORICO. As pertinent here,

first-degree theft, ORS 164.055, is a predicate ORICO crime. ORS 166.715(6)(a)(K).

ORS 166.715(2), the only statute to explicitly identify or describe "enterprise" for ORICO purposes, provides:

> " 'Enterprise' includes any individual, sole proprietorship, partnership, corporation, business trust or other profit or nonprofit legal entity, and includes any union, association or group of individuals associated in fact although not a legal entity, and both illicit and licit enterprises and governmental and nongovernmental entities."

Thus, ORICO "enterprise[s]" can be either formal ("legal entity") or informal ("not a legal entity") entities and associations—and it is immaterial whether those entities and associations are "licit" or "illicit."

Nevertheless, although ORS 166.715(2) broadly identifies the types of formal entities and informal organizations *"included"* in the universe of ORICO "enterprises," it does not purport to amplify or describe the common and essential features of such an "enterprise"—that is, what "enterprise" for ORICO purposes *means. Compare* ORS 166.715(4) ("'[p]attern of racketeering activity' *means* * * *"), *with* ORS 166.715(2) ("'[e]nterprise' *includes* * * *") (emphases added); *see also Cheek*, 100 Or App at 508, 508 n 1 (Graber, P. J., dissenting) (observing that "the definition of 'enterprise' in ORS 166.715(2) is incomplete[,]" but that, "[i]n contrast, the definition of '[p]attern of racketeering activity' states what the phrase 'means' and is complete").

Given that statutory design, we have reasoned in previous decisions that the fact that an entity or association (whether formal or informal) is of a type listed in ORS 166.715(2) does not necessarily or categorically establish that the entity or association is an ORICO "enterprise." Rather— as we have contextually derived and reiterated in *Cheek* and its attenuated progeny—such an entity or association, regardless of particular type, must bear certain requisite hallmarks common to all ORICO "enterprises." Specifically, an "enterprise" for purposes of ORS 166.715(2) and ORS 166.720(3) must partake of "an on-going organization, however loose, that is distinct from the commission of separate criminal acts" by the defendant. *Cheek*, 100 Or

App at 505; *see also State v. Pierce*, 153 Or App 569, 578-79, 962 P2d 35, *rev den*, 327 Or 448 (1998) (invoking and applying *Cheek* formulation in concluding that the state had presented legally sufficient evidence that the defendant's law firm with which, during the relevant period, "[b]etween one and three attorneys" were associated, constituted an ORICO "enterprise" and that "defendant had committed the predicate acts charged through the enterprise of his law office").

Thus, the prerequisites of an ORICO "enterprise" are (1) "organization, however loose" and (2) "ongoing" continuity. Further, the referent organization must be "distinct from the commission of separate criminal acts by an individual." *Cheek*, 100 Or App at 505.

Here, as noted, the state's theory of "enterprise" was that defendant and Williams were engaged in an ongoing "informal partnership." We do not understand defendant to dispute, as an abstract matter, that an "informal partnership" of two individuals *could* constitute an ORICO "enterprise."[4] Rather, defendant's contention is that the state failed to prove that his purported "informal partnership" with Williams was marked by the requisite organization and continuity.

In assessing the legal sufficiency of the state's proof, we highlight four salient concerns, some of which we alluded to above:

*First*, the *Cheek* formulation is, by its terms—*e.g.*, "however loose"—very broad. That is so because, as noted in *Cheek*, "[i]t is apparent that the legislature wanted to

---

[4] Although ORS 166.715(2) does not expressly include "informal partnerships" in its listing of species of ORICO enterprises, it does include "partnership[s]" in its listing of formal entities and "any * * * group of individuals associated in fact although not a legal entity" in its listing of informal associations. The alleged "informal partnership" in this case corresponds to the latter. That construction is dictated by the combination of (a) the statute's design, which includes not only formal "partnership[s]" (which can, of course, be composed of as few as two individuals) but also "individual[s]" as specifically listed entities, and (b) the legislature's patent intent to broadly "include *every* kind of enterprise within the definition of ORS 166.715(2)." *Cheek*, 100 Or App at 505 (emphasis in original). To include individuals and formal partnerships but to exclude "informal partnerships" would unaccountably subvert that intent and design.

include *every* kind of enterprise within the definition of ORS 166.715(2)." 100 Or App at 505 (emphasis in original).

*Second,* the transcendent consideration that informed the *Cheek* formulation and guides its application is that ORICO "is aimed at criminal activity that originates from a sense of organization[.]" *Id.*

*Third,* in many, perhaps most, ORICO prosecutions involving illicit "associated-in-fact" enterprises, there will be a symbiotic relationship between proof of a "pattern of racketeering activity" and proof of an "enterprise." That is so because, as a functional matter, the illicit enterprise's organizing dynamics may well be directed to the planning and commission of a continuing course of criminal conduct—and, conversely, the commission of a succession of crimes by combinations or permutations of the same actors can evince a precipitating and facilitating "sense of organization." *Cheek,* 100 Or App at 505. In that respect, as the United States Supreme Court has observed with respect to the federal RICO statutes, proof of the two ORICO elements "may in particular cases coalesce." *Turkette,* 452 US at 583.

*Fourth,* as a necessary corollary, although "pattern of racketeering activity" and "enterprise" must each be proved, and proof of one does not *necessarily* establish the other, proof of either can, depending on the circumstances, be legally sufficient to establish the other. For example, depending on the multiplicity, similarity, and temporal proximity of criminal acts by recurring combinations or permutations of actors, a finder of fact could reasonably infer that such conduct originates from some continuing organizational dynamic. Conversely, faced with the same evidence, a finder of fact might determine that, rather than originating from some overarching organizational dynamic, the seriatim, similar conduct was merely *ad hoc* or episodic. As the Court observed in *Boyle*:

> "It is easy to envision situations in which proof that individuals engaged in a pattern of racketeering activity would not establish the existence of an enterprise. For example, suppose that several individuals, *independently and without coordination,* engaged in a pattern of crimes listed as RICO predicates—for example, bribery or

extortion. Proof of these patterns would not be enough to show that the individuals were members of an enterprise."

556 US at 947 n 4 (emphasis added). *Cf. Turkette*, 452 US at 583 n 5 (noting that the government was not taking the position that "any two sporadic and isolated offenses by the same actor or actors *ipso facto* constitute an 'illegitimate' enterprise" (internal quotation marks omitted)).

Informed by those principles, we turn to the evidence in this case. For the reasons that follow, we conclude that the evidence here was sufficient to permit the jury to infer that defendant and Williams were "associated in fact" in an ongoing illicit enterprise—and that defendant, in committing the predicate thefts, acted through that joint criminal enterprise.

With respect to the "organizational" feature of the *Cheek* formulation, the jury could infer that the association between defendant and Williams was marked, at least to some degree, by an "organizational" manner because the men had acted in coordinated concert in all three of the Safeway thefts, following a precisely planned course of action. The state's evidence demonstrated that, on at least three occasions, defendant and Williams had concurrently entered a Safeway store and then, acting in synchronized fashion, had selected and stolen the same, idiosyncratic consumer items—*viz.*, disposable diapers, Tide laundry detergent, frozen shrimp, and beer.[5] Indeed, after following that choreographed course of action with respect to the first two episodes, defendant and Williams had then traveled together in Williams's car to Seaside, where they replicated their prior coordinated conduct—a circumstance consonant with a mutually planned targeting of the Seaside store. From the totality of those circumstances, a jury was entitled to infer that the three thefts, far from being random,

---

[5] We say "at least three occasions" because, as noted, although defendant had thrown a bag of frozen shrimp into Williams's car as he fled and Williams had abandoned his cart full of merchandise at the front of the store, when the Seaside police ultimately searched the trunk of Williams's car pursuant to his consent, they found "frozen shrimp and very cold beers, in addition to disposal baby diapers." The record does not disclose the source of those items.

sporadic, or isolated, originated from, and were the product of, an overarching, coordinated organizational dynamic and design.

For many of the same reasons, a reasonable trier of fact could infer the requisite "ongoing" continuity. Although none of our precedents appears to have amplified that concept, we note, parenthetically, that the Court in *Boyle* offered the somewhat enigmatic—or, arguably, tautological—observation that a federal RICO enterprise must have "sufficient duration to permit an associate to participate in [the enterprise's] affairs through a pattern of racketeering activity." *Boyle*, 556 US at 946 (internal quotation marks omitted). Be that as it may, and whatever the extreme margins of "ongoing" continuity for ORICO purposes,[6] it is patent, given the statute's design and purpose, that an enterprise of nearly two months' duration satisfies that requirement. Here, given the concurrence of actors and the congruency of particularized conduct in three criminal episodes between early February and late March 2009, the jury could infer that the "informal partnership" between defendant and Williams was "ongoing" over that time.

We address, finally, defendant's assertion that "there was no evidence of an entity *separate and distinct* from defendant and Williams that satisfied the enterprise element." (Emphasis added.) That is, respectfully, a *non sequitur*. To be sure, defendant and Williams were the sole *participants* in the "informal partnership" enterprise—but, just as with any other partnership, the collective is qualitatively distinct from its individual members. It is the collective character of the informal partnership, including the combination and coordination of its participants' efforts towards the achievement of a common purpose, that rendered this informal partnership an ORICO enterprise.

Affirmed.

---

[6] In addressing the sufficiency of proof of an alleged "pattern of racketeering activity," we have observed that "[s]eparate acts that took place within a very short period of time—even a few minutes—are sufficient to establish the requisite 'pattern.'" *Pierce*, 153 Or App at 577 (citing *Penuel v. Titan/Value Equities Group, Inc.*, 127 Or App 195, 204-05, 872 P2d 28, *rev den*, 319 Or 150 (1994)).

**EDMONDS, S. J.,** dissenting.

I respectfully disagree with the majority's analysis for the reason that follows.

The issue in this case turns on whether a reasonable factfinder could infer from the totality of the circumstances that defendant's criminal activity originated from a criminal enterprise or "a sense of organization." In enacting Oregon's version of ORICO, the legislature intended "to deal with multiple criminal activity that resulted from formal or informal organizations that traditional criminal prohibitions failed to cover" in order to provide "prosecutors [with] a tool to reach persons behind otherwise isolated acts of criminal conduct who were in fact responsible for those crimes." *State v. Cheek,* 100 Or App 501, 505 n 1, 786 P2d 1305, *rev den,* 310 Or 121 (1990). In *Cheek,* we held that the "sense of organization" necessary to satisfy ORICO's requirements in that case arose from the defendant's criminal activities where the evidence demonstrated that he directed a group of young men from broken families over a four-year period to commit 28 different crimes by choosing the site of the crimes, by planning their commission, by instructing others on how to commit them, and by providing others with the means for their commission. 100 Or App at 505.

This case lacks similar evidence from which the "sense of organization" element that ORICO requires can be reasonably inferred. The evidence merely demonstrates that the defendant acted in concert with another person to steal merchandise from two Safeway grocery stores by using the same *modus operandi* on three separate occasions. Importantly, there is no additional reasonable inference or evidence available that defendant's and his coactor's activities found their genesis in an ongoing criminal organization as distinguished from conduct involving *ad hoc* or episodic activities on multiple occasions.[1]

---

[1] For example, if two persons acting together committed multiple bank robberies, it would not follow from that fact alone that they were part of a criminal organization or enterprise. Rather, those facts demonstrate merely that they acted in concert on more than one occasion to commit crimes together.

In the abstract, I do not question that an "informal partnership" to commit multiple crimes could fall within the parameters of ORICO's definition of an enterprise, depending on the circumstances surrounding those crimes. However, it is apparent from the legislative history underlying ORICO that the legislature did not intend that multiple criminal acts committed by multiple persons without a criminal enterprise constitute the crime of criminal racketeering. Rather, ORICO was intended to make easier the prosecution of unlawful criminal activities that were more difficult to prosecute under traditional criminal prohibitions.

Here, the evidence shows that defendant and his coactor entered grocery stores and took merchandise off the shelf, placed the items in plastic bags, and left the stores without paying for them, and that they had been involved in similar thefts for the two-month period preceding defendant's arrest. Those activities evidence multiple acts of shoplifting for which defendant could be separately prosecuted under ordinary theft statutes. Unlike when persons merely act in concert to commit crimes, an "enterprise" for purposes of the ORICO statute requires that an organization exist that is distinct from the commission of the predicate crimes. *Cheek*, 100 Or App at 505; *see also State v. Pierce*, 153 Or App 569, 579, 962 P2d 35 (1998) (holding that a law office functioned as an "enterprise" separate from the criminal acts committed by its member). What is missing from the evidence in this case is some fact from which it could be inferred that defendant and his coactor were involved in an ongoing criminal business venture of which their thefts were a part—for example, acting together in an organized manner to steal particular merchandise, which, in turn, they could then sell to an available buyer. It follows, because a reasonable factfinder could not infer from the evidence that defendant was acting pursuant to an organized criminal racketeering activity of the kind that we recognized in *Cheek*, that ORICO is not available.

For this reason, I dissent.