Argued and submitted April 30, judgment of conviction for unlawful sound
recording and restitution award reversed; remanded for resentencing;
otherwise affirmed December 12, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSE AURELIO OIDOR,
*Defendant-Appellant.*

Multnomah County Circuit Court
090833172; A145040

292 P3d 629

Erik M. Blumenthal, Deputy Public Defender, argued
the cause for appellant. With him on the brief was Peter
Gartlan, Chief Defender, Office of Public Defense Services.

Rolf C. Moan, Assistant Attorney General, argued the
cause for respondent. With him on the brief were John R.
Kroger, Attorney General, and Mary H. Williams, Solicitor
General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

ARMSTRONG, P. J.

14

**ARMSTRONG, P. J.**

Defendant appeals a judgment convicting him of unlawful sound recording (the sound-recording count), ORS 164.865, and unlawful labeling of a sound recording (the unlawful-labeling count), ORS 164.868. He assigns error to the trial court's denial of his motion to dismiss the sound-recording count on the ground that the statute on which it is based, ORS 164.865(1)(b), is preempted by federal copyright law; to its denial of his motion for a judgment of acquittal (MJOA) on both counts; and to its imposition of restitution on the unlawful-labeling count. We conclude that the federal Copyright Act, 17 USC §§ 101-1332, preempts ORS 164.865(1)(b) and, thus, that the trial court erred in denying defendant's motion to dismiss the sound-recording count. We further conclude that there was sufficient evidence to support the conviction of defendant on the unlawful-labeling count and, thus, that the trial court did not err in denying defendant's MJOA on that count. Finally, we conclude that the court erred in imposing restitution on the latter count.

While driving his car, defendant was stopped by Officer Beetham for the traffic offense of failing to renew the vehicle registration for the car. Defendant consented to Beetham searching the car, and Beetham found bags and boxes of music compact discs (CDs) that Beetham thought might be unauthorized CD reproductions because the images and bar codes on the CD jackets were blurry.

Defendant told Beetham that he sold music CDs at a booth at a local flea market and that he had more CDs at his home. Defendant consented to a search of his home, where Beetham found and seized additional CDs that he believed were unauthorized reproductions. Beetham then contacted Detective Hogan, who had experience investigating the unauthorized reproduction and sale of music CDs. Beetham and Hogan went to defendant's booth at the flea market and seized additional CDs that had characteristics indicative of unauthorized reproductions.

Defendant was charged with unlawful sound recording, ORS 164.865(1)(b), and unlawful labeling of a sound recording, ORS 164.868. At trial, Hogan testified that he had training from the Recording Industry Association of America (RIAA) in identifying unauthorized reproductions

of music CDs. He explained that the RIAA is an organization of recording artists and related businesses that have established an industry standard for music CDs and that the members of the RIAA follow the industry standard.

Hogan further explained that, over the course of his investigation, he had verified that the locations listed on the seized CDs as the addresses of the CDs' manufacturers were not the locations at which the CDs had been manufactured. He said that he had sent pictures of the CD jackets to RIAA representatives, who had verified that RIAA members were the manufacturers of the authorized versions of the CDs.[1]

Hogan also testified about the characteristics of CDs produced according to the industry standard and compared them with the characteristics of unauthorized reproductions. He explained that CD jackets produced according to the industry standard are tightly shrink-wrapped and sealed with a security label, while unauthorized reproductions often are wrapped in looser plastic and do not have a security label. In addition, CDs for each recording artist have a specific barcode identifying the particular recording; in contrast, unauthorized reproductions may display the same barcode on CDs containing the music of different recording artists.

Hogan added that, when a person duplicates a CD without authorization from its owner, the person copies an authorized version of the CD and its jacket. In doing that, the jackets are scanned and reproduced by a laser-jet printer, typically using poorer quality materials than those used by RIAA members, and, as a result, the jackets may have a blurry image and a poorer color quality. Further, unauthorized reproductions generally have the music written onto a recordable CD, unlike a CD manufactured according to the industry standard, which has the music pressed into it.

---

[1] Defendant contends that the trial court excluded as hearsay Hogan's testimony about the statements that the RIAA representatives had made to him. Although defendant objected to Hogan's testimony about those statements as hearsay, defendant agreed to limit his objection to testimony by Hogan that the RIAA representatives had verified that the CDs that the officers had seized from defendant had been reproduced without authorization. Consequently, the balance of Hogan's statements about his interaction with the RIAA representatives was admitted.

Finally, Hogan testified that the CDs seized from defendant did not conform to the industry standard but, instead, had characteristics indicative of unauthorized reproductions: they were encased in a loose plastic covering, had the same barcode affixed to CDs by different recording artists, had blurry jackets, and had the music written onto recordable CDs rather than pressed into them.

Defendant moved to dismiss the sound-recording count, contending that the Copyright Act expressly preempted the statute on which it is based, ORS 164.865(1)(b); the trial court denied the motion. At the close of the state's evidence, defendant moved for a judgment of acquittal on both counts. The court denied the motion and convicted defendant of both counts. In its judgment on the convictions, the court ordered defendant to pay $500 in restitution to the RIAA on the unlawful-labeling count.

Defendant appeals, contending that the trial court erred in denying his motion to dismiss the sound-recording count, in denying his MJOA on both counts, and in awarding restitution. We begin with his argument that the trial court erred in denying his motion to dismiss the sound-recording count on the ground that the federal Copyright Act preempts the state statute on which the count was based, ORS 164.865(1)(b).

The source of Congress's power to preempt state law is the Supremacy Clause of Article VI of the United States Constitution, which provides that the laws of the United States are "the supreme Law of the Land" and that the state courts "shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." There are three recognized circumstances in which a federal law preempts a state law: (1) when the federal law expressly preempts state law; (2) when the statutory scheme of the federal law "so completely occupies the field with respect to some subject matter that an intent to exclude the states from legislating in that subject area is implied"; and (3) when there is an actual conflict between the federal and state laws. *Willis v. Winters*, 350 Or 299, 308, 253 P3d 1058 (2011). The parties here have limited their arguments to the first type of preemption, *viz.*, express preemption.

When a federal law expressly preempts a state law, the state law is without effect. *Wolf v. Central Oregon & Pacific Railroad, Inc.*, 230 Or App 269, 275-76, 216 P3d 316 (2009). Hence, if the Copyright Act expressly preempts ORS 164.865(1)(b), then the court erred in denying defendant's motion to dismiss the sound-recording count because the statute on which it is based is without effect.

Section 301(a) of the Copyright Act provides:

"On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State."

17 USC § 301(a). Thus, section 301 provides that the Copyright Act preempts a state law if the work at issue is fixed in a tangible medium and comes within the subject matter of copyright as specified by sections 102 and 103, and the state law creates a right that is "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106."

ORS 164.865(1)(b) prohibits a person from knowingly selling or offering or advertising for sale a sound recording that has been reproduced without the written consent of the person who owns the sound fixed in the master recording from which the sound recording was directly or indirectly derived.[2] A recording is "a tangible medium on which information, sounds or images, or any combination thereof, are recorded or otherwise stored." ORS 164.864(10).

---

[2] ORS 164.865(1)(b) provides:

"A person commits the crime of unlawful sound recording if the person:

"* * * * *

"(b) Knowingly sells, offers for sale or advertises for sale any sound recording that has been reproduced without the written consent of the owner of the master recording."

The "master recording" is "the master disk, master tape, master film or other device used for reproducing recorded sound from which a sound recording is directly or indirectly derived." ORS 164.864(6).

Sound recordings are given copyright protection by 17 USC section 102(a)(7). Thus, ORS 164.865(1)(b) governs work that is fixed in a tangible medium and that comes within the subject matter of copyright. Hence, the Copyright Act preempts ORS 164.865(1)(b) if ORS 164.865(1)(b) creates a right that is equivalent to any of the exclusive rights that are within the general scope of copyright.

Defendant contends that section 301 of the Copyright Act preempts ORS 164.865(1)(b) because ORS 164.865(1)(b) provides protection equivalent to the exclusive right of distribution created by the Copyright Act, 17 USC § 106(3),[3] by prohibiting a person from selling or attempting to sell a sound recording without the consent of its owner. The state responds that the Copyright Act does not preempt ORS 164.865(1)(b) because ORS 164.865(1)(b) does not grant a "right" to anyone. The state recognizes that ORS 164.865(1)(b) prohibits a person from infringing another person's copyright by selling a reproduction of the copyrighted work without its owner's consent. Nonetheless, it contends, in essence, that ORS 164.865(1)(b) does not grant rights to anyone because the protections provided by the statute are enforced through criminal prosecution, which is controlled by the state. Because the statute does not grant the owners of protected works the ability to enforce its protections, the statute does not grant copyright owners a right that could be equivalent to copyright, and, accordingly, the statute is not preempted by section 301.

In evaluating whether a federal law preempts a state law, the paramount consideration is Congress's intent. *Wolf*, 230 Or App at 276. The House Committee on the Judiciary explained that the purpose of section 301 was to create a single, uniform system of copyright protection by state and common-law copyright protections in favor of the federal Copyright Act. HR Rep No 94-1476, 94th Cong, 2d Sess, *reprinted in* 1976 USCCAN 5659, 5745. The committee further explained that section 301 was intended to "avoid the development of any vague borderline areas between State and Federal [copyright] protection," explicitly stating that,

---

[3] 17 USC section 106(3) provides that the owner of a copyright has the exclusive right "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."

regardless "of when the work was created and whether it is published or unpublished, disseminated or undisseminated, in the public domain or copyrighted under the Federal statute, the States cannot offer it protection equivalent to copyright." *Id.* at 5746. The committee explained that, by creating a single, uniform system of copyright protection, the Copyright Act would provide copyright holders with more certainty about the scope of their rights and establish a less complicated system for enforcing those rights. *Id.* at 5745.

Thus, although the state emphasizes that, by using the term "rights," Congress intended to limit section 301's preemptive effect to civil laws that provide enforceable rights to copyright holders, the legislative history of section 301 establishes that, in order to avoid inconsistencies between federal and state laws, Congress intended section 301 to prevent states from providing protections equivalent to copyright protection. Applying the preemptive effect of section 301 to state civil but not criminal law could lead to the development of "vague borderline areas" between federal and state protection of copyrights. Under the Copyright Act, a copyright holder is entitled to exclusive rights in his or her work for a defined duration, 17 USC § 302, and the copyright holder's exclusive rights are limited by principles such as fair use, 17 USC § 107. Conversely, ORS 164.865(1)(b), by prohibiting the sale of a sound recording without the consent of its owner, provides the owner with perpetual protection that is not limited by copyright principles such as fair use. Thus, if section 301 does not preempt ORS 164.865(1)(b), then Oregon criminal law would provide copyright holders with different protections for their work from those that they have under the Copyright Act, in contravention of Congress's intent in enacting section 301.

We therefore conclude that Congress intended section 301's preemptive effect to apply to state criminal as well as civil laws. Our conclusion is consistent with that reached by courts in other jurisdictions on the application of section 301 to state criminal statutes. *See People v. Williams*, 235 Ill 2d 178, 194-95, 920 NE2d 446, 457 (2009) (concluding that nearly "every, if not every, court nationwide

that has considered preemption under section 301 has either expressly or impliedly concluded that preemption was intended to apply to state criminal prosecutions"). The remaining question is whether ORS 164.865(1)(b) provides a right that is equivalent to any of the exclusive rights within the general scope of the Copyright Act.

Defendant contends that the protections that ORS 164.865(1)(b) provides are equivalent to the Copyright Act's exclusive right of distribution, 17 USC § 106(3). The state responds that they are not equivalent because ORS 164.865(1)(b) prohibits offering and advertising sound recordings for sale, which the federal act does not specifically prohibit and which are acts that precede and do not necessarily lead to the unauthorized distribution of copyrighted recordings.

The overall purpose of ORS 164.865(1)(b) is to protect the owner of a sound recording from injury caused by the sale of a reproduction of the sound recording without the owner's consent, that is, to protect the owner's federal copyright. Although ORS 164.865(1)(b) prohibits offering and advertising sound recordings for sale, those prohibitions are intended to protect against the unauthorized sale of a sound recording by prohibiting some of the steps that can lead to such a sale. In other words, the statute enhances or supplements the protection afforded to copyright owners by the federal act by prohibiting acts that can lead to the unauthorized distribution by sale of copyrighted sound recordings. *Cf. People v. Borriello*, 588 NYS2d 991, 995, 155 Misc 2d 261, 266 (1992) (concluding, in analyzing a criminal statute analogous to ORS 164.865(1)(b), that a prohibition against advertisement does not provide for an additional to sale because advertisement "is a method to facilitate or attract customers for a sale"). Prohibiting a person from selling or attempting to sell a work without its owner's permission is the functional equivalent of granting the owner the exclusive right to control the distribution of the work by sale. We therefore conclude that section 301 of the Copyright Act preempts ORS 164.865(1)(b) because ORS 164.865(1)(b) creates a right that is equivalent to the exclusive distribution right that the federal act grants to copyright owners. It follows that the trial court erred in

denying defendant's motion to dismiss the sound-recording count that was based on that statute.

Defendant also assigns error to the trial court's denial of his MJOA on the unlawful-labeling count. ORS 164.868(1) provides:

"A person commits unlawful labeling of a sound recording if the person:

"(a) Fails to disclose the origin of a sound recording when the person knowingly advertises or offers for sale or resale, sells, resells, rents, leases, or lends or possesses for any of these purposes, any sound recording that does not contain the true name and address of the manufacturer in a prominent place on the cover, jacket or label of the sound recording; and

"(b) Possesses five or more duplicate copies or 20 or more individual copies of recordings produced without consent of the owner or performer and the recordings are intended for sale or distribution in violation of this section."

Thus, to convict a person of unlawful labeling of music CDs, the state must prove, as relevant here, that the CDs did not contain the true name and address of the entity that manufactured the CDs that defendant was selling and that the CDs were duplicated without the consent of the owners of the music they contained.

ORS 136.445 provides that a trial court must grant an MJOA if the evidence introduced by the state is insufficient to support a verdict against the defendant. "In reviewing the denial of an MJOA, we determine whether, viewing the evidence and reasonably derived inferences from that evidence in the light most favorable to the state, [a] rational trier of fact could have found the of the offense beyond a reasonable doubt." *State v. Walker*, 252 Or App 1, 3, 285 P3d 751 (2012).

We conclude that a rational trier of fact could have found the of unlawful labeling of a sound recording beyond a reasonable doubt. Hogan testified that he had verified that RIAA members manufactured the authorized versions of the CDs that the officers had seized from defendant. He also testified that RIAA members produce CDs according to a uniform industry standard and that numerous aspects

of the CDs seized from defendant failed to conform to those standards. Instead, the CDs had characteristics of CDs that have been duplicated without authorization.

From that testimony, a rational trier of fact could infer that RIAA members require that every authorized reproduction of their CDs conform to the industry standard. Thus, a rational trier of fact could infer that, if an RIAA member manufactured the authorized copies of a CD and a duplicate of the CD does not conform to the industry standard, then the duplicate CD is an unauthorized copy.

Furthermore, Hogan testified that the CD jackets of unauthorized duplications are scanned reproductions of the jackets of authorized versions of them and that the former are often blurry due to having been scanned and printed using lesser-quality materials. He also testified that some of the CDs that he and Beetham had seized from defendant fit that description. From that testimony, a rational trier of fact could infer that the jackets of the CDs seized from defendant were scanned reproductions of the jackets of authorized copies of the CDs and that the jackets contained the name and address of the entity that manufactured the authorized version of the CD but not the name and address of the entity that manufactured the unauthorized duplicates. Therefore, a rational trier of fact could infer that the labels of the CDs did not contain the true name and address of the manufacturer and that the CDs had been produced without the consent of the owner or performer of the music. Thus, the trial court did not err in denying defendant's MJOA on the unlawful-labeling count.

Finally, defendant assigns error to the trial court's imposition of $500 in restitution on his conviction for unlawful labeling, contending that the record lacks evidence to support the restitution award. He acknowledges that he did not preserve this assignment of error but asks that we review it as plain error, ORAP 5.45(1), and exercise our discretion to correct it. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). The state concedes that the court plainly erred in imposing restitution. We agree

and accept the state's concession; we further exercise our discretion to correct the error.

ORS 137.106(1)(a) provides that, if a court finds from the evidence presented to it that a victim suffered economic damages as a result of a defendant's crime, then the court shall require the defendant to pay restitution to the victim in the amount of the victim's economic damages. A court's imposition of restitution in the absence of any evidence from which the court could have made the requisite findings is plain error. *State v. Martinez*, 250 Or App 342, 344, 280 P3d 399 (2012). Here, the record contains no evidence from which the court could find that defendant's criminal conduct caused any economic damages to a victim, and, hence, the court plainly erred in imposing restitution.

We also exercise our discretion to correct the error. Although the $500 restitution award is a relatively small amount, the interests of justice militate against requiring a defendant to pay an obligation for which there is no factual basis. *Id.*

Judgment of conviction for unlawful sound recording and restitution award reversed; remanded for resentencing; otherwise affirmed.