674 A.2d 55

**Larry Craig HICKS**

v.

**STATE of Maryland.**

**No. 958, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

March 29, 1996.

**116**

William E. Seekford, Towson, for Appellant.

Tarra DeShields–Minnis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Joseph I. Cassily, State's Attorney for Harford County, Bel Air, on the brief), for Appellee.

Argued before WILNER, C.J., and HARRELL and EYLER, JJ.

WILNER, Chief Judge.

After a non-jury trial in the Circuit Court for Harford County, appellant was convicted of having violated Md.Code art. 27, § 467A(b). That section makes it unlawful for any person

"to sell, rent, distribute, circulate, offer for sale, rental, distribution, or circulation, or possess for the purpose of sale, rental, distribution, or circulation, any phonograph record, disc, wire, tape, film, videocassette, or other article on which sounds or images have been transferred or stored unless the phonograph, record, disc, wire, tape, film, video-cassette, or other article bears the actual name and street address of the transferor of the sounds or images and the name of the actual performer or group in a prominent place on its outside face or package."

For that violation, appellant received a one-year suspended sentence and two years probation. He was also fined $2,500 and directed to pay court costs. In addition, certain property of his that had been seized was declared forfeit.

In this appeal, appellant complains that (1) art. 27, § 467A(b) is preempted by the Federal Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*, (2) his indictment was so facially defective as to deny him due process, (3) his motion to quash, suppress, and return physical evidence seized by police should have been granted, (4) the evidence was insufficient to support his conviction, and (5) the forfeiture of his property without a hearing or trial was error. Each of those arguments will be addressed below.

## UNDERLYING FACTS

On June 18, 1993, upon application by State Police Sergeant James Wright, a judge in Harford County found probable cause to believe that an adult book store known as The Depot, located at 1634 Pulaski Highway in Havre de Grace, contained unauthorized recorded copies of X-rated adult video tapes, legitimate tapes used to produce the unauthorized copies, video recording equipment used in the unauthorized copying,

blank VHS videocassettes, equipment used to produce labels, blank labels, and documents revealing both the sale and rental of unauthorized copies of videocassette tapes and the identity of employees engaged in committing acts in violation of § 467A. In essence, there was evidence of a pirating operation—the unauthorized copying of legitimate videocassette tapes for sale or rental. The judge therefore issued a warrant authorizing the search of that premises for the items noted and the seizure of any such items found, provided that not more than 100 unauthorized cassettes and not more than 24 blank cassettes could be seized.

The warrant was executed the same day and resulted in the seizure of items pertaining to 53 video tape cassettes. As to each, the police seized what they regarded as an authorized, legitimate copy of the cassette, a box for that cassette, an unauthorized copy of the cassette, and a box for the unauthorized copy. In addition, the police seized 21 videocassette tape players and five television display monitors.

On June 4, 1993—two weeks before the issuance and execution of that warrant—in an entirely separate landlord-tenant dispute, John Philip, Inc., the owner of property at 3011–B Pulaski Highway, in Edgewood, had the Harford County Sheriff levy execution on property of Heather D & M Corporation, the tenant operating at that location. Among the items seized in that levy were magazines, videotapes, and other assorted adult material. The attorney for the landlord, concerned whether some of the items might be legally obscene and therefore not susceptible to sheriff's sale, contacted the State's Attorney and invited him to examine the material. That was done, and eventually the sheriff was directed to store the material. No warrant was ever sought or issued with respect to those items.

The common element in these two "seizures" was the fact that the property seized belonged to T & A Leasing, Incorporated, of which appellant was the manager. T & A operated out of appellant's home as well as in the basement of The Depot; it supplied the tapes rented and sold by The Depot.

It also supplied the tapes to Heather D & M Corporation that had been seized under the levy.

On December 28, 1993, a two-count indictment was returned against appellant. Count I, charging a violation of § 467A(b), alleged that, between May 4 and July 3, 1993, appellant
"unlawfully did sell, rent, distribute, offer for sale and rental and possess for the purposes of sale, rental and distribution, videocassettes which did not bear the name and address of the transferor of the sounds and images and the name of the actual performer in a prominent place on its outside face and package in violation [of § 467A]." [1]

Following that indictment, appellant demanded a bill of particulars, among other things to set forth detailed information with respect to each videocassette included within the indictment. He also moved to suppress the evidence seized from both locations and to dismiss the indictment on the ground of Federal preemption. In a well-written Memorandum Opinion and Order filed September 6, 1994, Judge Close rejected appellant's requests. He found that appellant had no standing to complain about the seizure of tapes from the Edgewood property because those tapes were all located on open shelves in the public area of the store and there was, accordingly, no reasonable expectation of privacy on appellant's part. Judge Close rejected the motion to suppress the tapes seized from The Depot on the ground that the warrant authorizing the seizure was supported by adequate probable cause. Finally, for our purposes, he concluded that § 467A(b) was not preempted by the Federal Copyright Act.

The case was tried on a stipulated record, *i.e.*, appellant agreed that certain witnesses, if called, would testify as proffered by the prosecutor. That was supplemented by various exhibits admitted into evidence.

We turn now to the issues raised by appellant.

---

1. Count II charged appellant with a continuing scheme to steal the intellectual property of the persons who produced the "legitimate" tapes. That count was eventually nol prossed and bears no further relevance to this case.

## PREEMPTION—FEDERAL COPYRIGHT ACT

■ Appellant first contends that the Federal Copyright Act of 1976, 17 U.S.C. § 101, *et seq.,* preempts Md.Code art. 27, § 467A(b) and, therefore, his conviction under that statute must be reversed. We disagree.

By way of introduction, we note that § 467A(b) is part of a broader statute proscribing the unauthorized transfer and recording of sounds and images. Section 467A(a)(1) makes it unlawful for a person knowingly to transfer sounds recorded on one recording to any other recording, for the purpose of sale for profit, without the consent of the owner of the original fixation of sounds on the master recording. Subsection (a)(2) prohibits the recording of sounds or images from a live, radio, or televised performance, for the purpose of sale for profit, without the consent of the performer. Subsection (a)(3) makes it unlawful for a person to distribute, offer for distribution, or possess for purposes of distribution any recorded article to which sounds have been transferred in violation of subsection (a)(1) or (a)(2).

Section 467A(b) assists in implementing those provisions in subsection (a) by requiring all recordings to which sounds or images have been transferred to contain, on the face or package of the recording, the name and address of the transferor and the name of the performer. This, of course, makes it easier for consumers and law enforcement agents to determine whether a particular recording offered for sale or rent is a "pirated" product.

Art. I, § 8, cl. 8 of the Federal Constitution grants to Congress the power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." That provision is the underpinning for Federal copyright and patent laws.

From the beginning, the power to define and protect literary property was regarded as a concurrent one shared by the Federal and State governments; the Constitutional provision did not, of itself, vest exclusive control over the field to

Congress. *See Wheaton v. Peters,* 33 U.S. (8 Peters) 591, 604, 8 L.Ed. 1055 (1834). Indeed, until the enactment of the Copyright Act of 1976, Federal law, for the most part, protected only certain kinds of published works; it was State law, to the extent it existed, that protected unpublished works.[2]

The authority of Congress under the Constitution to preempt State law was not disputed, but, since the first copyright law was enacted in 1790, Congress had simply chosen not to exercise that authority. *See Goldstein v. California,* 412 U.S. 546, 560, 93 S.Ct. 2303, 2311, 37 L.Ed.2d 163 (1973), upholding a California statute punishing the unauthorized transferring of sounds recorded on phonograph records and tapes.

The question before us is whether, and to what extent, through the Copyright Act of 1976, Congress has effectively preempted the area of regulation covered by § 467A(b).

When exercising a Constitutional authority granted to it, Congress may effect a preemption of State law in three different ways—by expressly stating its intention to preempt, by enacting a scheme of regulation sufficiently comprehensive as to "occupy a given field or to make clear that Congress left no room for supplementary state legislation," or by enacting legislation in actual conflict with State law. *Board of Trustees v. City of Baltimore,* 317 Md. 72, 115, 562 A.2d 720 (1989), *cert. denied* 493 U.S. 1093, 110 S.Ct. 1167, 107 L.Ed.2d 1069 (1990). Preemption is not lightly presumed; the party claiming it bears the burden of proof. *Id.* at 115–16, 562 A.2d 720.

---

2. As noted in both the Senate and House Judiciary Committee Reports on S. 22, the preemption provisions of § 301 of the Act "would accomplish a fundamental and significant change in the present law." The Committee Reports continued:

"Instead of a dual system of 'common law copyright' for unpublished works and statutory copyright for published works, which has been the system in effect in the United States since the first copyright statute in 1790, the bill adopts a single system of Federal statutory copyright from creation."

Senate Report (Judiciary Committee) No. 94–473 (Nov. 20, 1975); House Report (Judiciary Committee) No. 94–1476 (Sept. 3, 1976). *See also* 1 *Boorstyn on Copyright,* §§ 1.02–1.07 (1996).

In § 301 of the 1976 Copyright Act, Congress has expressly declared its intention with respect to preemption. Section 301(a) states:

"On and after January 1, 1978, all legal or equitable rights *that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106* in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to *any such right or equivalent right* in any such work under the common law or statutes of any State."

(Emphasis added.)

Section 301(a) constitutes an express preemption, but one that is limited in scope. In § 301(b), Congress made clear that subsection (a) did not annul or limit any State rights or remedies with respect to, among other things, "(3) activities violating legal or equitable rights *that are not equivalent* to any of the exclusive rights within the general scope of copyright as specified by section 106." (Emphasis added.)

Section 301, therefore, preempts State law when (1) the subject of the State law falls within the subject matter of the Copyright Act, *i.e.,* §§ 102 and 103 of that Act, and (2) when the State law creates rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106.

There is no dispute that videocassettes—the subject of § 467A(b) relevant to this case—are within the scope of § 102 of the Copyright Act. Section 102(a)(6) and (7) provide that copyright protection exists in "original works of authorship fixed in any tangible medium of expression ... from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device," including works of authorship in "motion pictures and other audiovisual works" and "sound recordings."

The issue hinges on § 106. Section 301(a) preemption applies to legal and equitable rights that are "equivalent" to any of the exclusive rights within the general scope of copyright specified in 106; the non-preemption stated in § 301(b), conversely, applies to activities violating legal or equitable rights that "are not equivalent" to the exclusive rights encompassed within § 106.

Section 106 grants to the copyright holder the exclusive rights:

"(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of literary, musical, dramatic, or choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly."

Section 467A(b) does not *directly* add to, emulate, modify, or inhibit any of those rights. It prohibits various forms of distributing, or possessing with intent to so distribute, enumerated items, including videocassettes, on which the sounds or images have been transferred or stored unless the item bears, on its outside face or package, the name and address of the person transferring those sounds or images and the name of the performer. The question, of course, is whether that constitutes an "equivalent" right or prohibition.

As S. 22—the bill that became the Copyright Act of 1976—passed the Senate and was reported out of the House Judicia-

ry Committee, § 301(b)(3) had some additional language in it. It made clear that the Act did not preempt

"activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general ·scope of copyright as specified by section 106, *including rights against misappropriation not equivalent to any of such exclusive rights, breaches of contract, breaches of trust, trespass, conversion, invasion of privacy, defamation, and deception trade practices such as passing off and false representation* . . . ."

(Emphasis added.)

The Senate and House Judiciary Committee Reports commented on the scope of § 301(b), including the examples then included in § 301(b)(3). They noted first:

"In a general way subsection (b) of section 301 represents the obverse of subsection (a). It sets out, in broad terms and without necessarily being exhaustive, some of the principal areas of protection that preemption would not prevent the States from protecting."

Turning then to subsection (b)(3) in particular, the Committee, Reports stated that the examples in that clause "while not exhaustive, are intended to illustrate rights and remedies that are different in nature from the rights comprised in a copyright and that may continue to be protected under State common law or statute." Specifically,

"[t]he last example listed in clause (3)—'deceptive trade practices such as passing off and false representation'— represents an effort to distinguish between those causes of· action known as 'unfair competition' that the copyright statute is not intended to preempt and those that it is. Section 301 *is not intended to preempt common law protection in cases involving activities such as false labeling, fraudulent representation, and passing off even where the subject matter involved comes within the scope of the copyright statute.*"

(Emphasis added.)

When the bill emerged on the floor of the House of Representatives, on motion by Congressman Seiberling, the exam-

ples included in subsection (b)(3) were deleted. It is clear from the debate on the motion, however, that the intent was not to circumscribe the exemption for false labeling, etc., but rather to address a concern of the Justice Department about the language dealing with "misappropriation," which had too close a nexus to infringement. The intent was simply to remove the examples from the bill. *See* 122 Cong.Rec. 32015 (1976). This, indeed, is how the courts and commentators have viewed the floor amendment. *See National Car Rental v. Computer Associates,* 991 F.2d 426, 433–34 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 176, 126 L.Ed.2d 136 (1993); *Factors Etc., Inc. v. Pro Arts, Inc.,* 496 F.Supp. 1090, 1097 (S.D.N.Y.1980), *rev'd on other grounds,* 652 F.2d 278 (2d Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982); *Mayer v. Josiah Wedgwood & Sons, Ltd.,* 601 F.Supp. 1523, 1533 (S.D.N.Y.1985); 1 M. Nimmer, *The Law of Copyright,* § 1.01[B][1][f] at 1–26—1–30 (1995).

In determining whether a State law constitutes the "equivalent" of a right protected under § 106, the prevailing test seems to be whether the State law contains some "extra element" not included in § 106. Nimmer describes the test thusly:

> "[I]f under state law the act of reproduction, performance, distribution or display, no matter whether the law includes all such acts or only some, will *in itself* infringe the state-created right, then such right is preempted. But if qualitatively other elements are required, instead of, or in addition to, the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption."

1 Nimmer, *supra,* § 1.01[B], at 1–15 to 1–16.

That test was adopted in *Harper & Row Publishers, Inc. v. Nation Enterprises,* 723 F.2d 195, 200 (2d Cir.1983), *rev'd and remanded on other grounds,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985), and *Mayer v. Josiah Wedgwood & Sons, Ltd, supra,* 601 F.Supp. 1523, at 1535. More important, we

adopted it in *Yost v. Early,* 87 Md.App. 364, 387, 589 A.2d 1291 (1991).

Two courts have applied that test to sustain State statutes akin to § 467A(b). In *People v. Borriello,* 155 Misc.2d 261, 588 N.Y.S.2d 991 (Sup.1992), the defendant moved to dismiss charges alleging the violation of New York statutes (1) proscribing the knowing sale or rental of a recording produced or transferred without the consent of the owner, and (2) selling, renting, or offering for sale or rent a recording, the outside box of which does not clearly disclose the name and address of the manufacturer and the name of the performer. The latter statute, of course, is much like the proscription in § 467A(b). Applying the "extra element" test, the Court held that the first statute was preempted, but that the second was not. With respect to the second statute, the Court held, at 996:

> "The focus of Penal Law § 275.35 is on labelling or packaging. The crucial element is that the carton or outer container holding the recording be in deceptive condition. This statute does not require the defendant to infringe the rights of the copyright owner. This statute can be violated even if the transferor has permission and authority to sell the recording from the copyright owner if the labels or packages are deceptive. The required element is that the cover, box or jacket does not clearly and conspicuously disclose manufacturer information. This is an 'extra element' that makes the statute 'qualitatively' different from a copyright infringement claim. The rights being affected are not 'equivalent' rights 'within the general scope of copyright.' Although distribution is an element of this statute, this is an additional element which takes it out of a copyright infringement statute."

Additionally, the Court observed that the right protected in a copyright infringement claim is the owner's property right in his intellectual endeavor, whereas the State statute was aimed at protecting the rights of consumers.

The same conclusion was reached in *State v. Awawdeh,* 72 Wash.App. 373, 864 P.2d 965, *review denied,* 124 Wash.2d

1004, 877 P.2d 1288, *cert. denied,* ——— U.S. ———, 115 S.Ct. 441, 130 L.Ed.2d 352 (1994). The defendant there was charged with violating a State law proscribing the sale, rental, or offering for sale or rental a recording "which does not contain the true name and address of the manufacturer in a prominent place on the cover, jacket, or label of the recording." Adopting the "extra element" test and citing *Borriello,* the Court held that the extra element of disclosure made the requirement qualitatively different from, and therefore not "equivalent" to the protections of § 106. *Id.,* 864 P.2d at 968.

Given the legislative history of § 301 noted above, we find these cases persuasive. Indeed, they are consistent with the view taken by the Supreme Court with respect to items subject to the Federal patent law. In *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), the Court held that a State could not, through an unfair competition law, prohibit the copying of an item that was not protected by a Federal patent or copyright. The Court reasoned that an unpatented or uncopyrighted item is in the public domain and could thus be made and sold by anyone. The mere prospect of consumer confusion would not justify a State remedy for copying that which Federal law allows to be copied. The Court noted, however, at 232, 84 S.Ct. at 789, that "[d]oubtless a State may, in appropriate circumstances, require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source . . . ." *See also Compco Corp. v. Day–Brite Lighting,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).

We hold that § 467A(b) is not preempted by the Federal Copyright Act.

## THE INDICTMENT

We have set forth above the text of Count I of the indictment, noting that it charged appellant with offering for sale or rent "videocassettes" which did not bear the name and address of the transferor or the name of the performer, citing

§ 467A. We mentioned as well that appellant filed a demand for particulars, contending that he was unable to determine the scope, nature, and extent of the alleged criminal conduct or the property involved. When his demand was rejected, he moved, unsuccessfully, to dismiss the indictment. He complains to us that the indictment was legally insufficient because (1) it failed to charge that he acted "knowingly," (2) it failed to state that the videocassettes had sound or images transferred to or stored on them, and (3) it failed to identify the particular videocassettes that were included within it.

In ascertaining the sufficiency of an indictment, we look for guidance to *Williams v. State*, 302 Md. 787, 791, 490 A.2d 1277 (1985), in which the Court iterated the reasons for clarity in charging documents:

"(1) putting the accused on notice of what he is called upon to defend by characterizing and describing the crime and conduct;

(2) protecting the accused from a future prosecution for the same offense;

(3) enabling the accused to prepare for his trial;

(4) providing a basis for the court to consider the legal sufficiency of the charging document; and

(5) informing the court of the specific crime charged so that, if required, sentence may be pronounced in accordance with the right of the case."

With respect to the failure to aver that appellant acted "knowingly" and the omission that the videocassettes had sounds or images transferred on them, in *Jones v. State*, 303 Md 323, 337, 493 A.2d 1062 (1985), the Court provided the appropriate guidance:

"All essential elements of the crime need not, however, be *expressly* averred in the charging document; elements may be implied from language used in the indictment or information. * * * In [*State v.*] *Coblentz* [167 Md. 523, 175 A. 340 (1934)], involving a charging document for fraud, we concluded that the essential element of knowledge ... was implied from a fair reading of the language of the indict-

ment. We there said that 'the fact that the words [of the indictment] may leave unspecified one or more essential elements of the crime' is not necessarily fatal."

(Citations omitted.) The Court stated that the question is "whether the indictment is constitutionally deficient, not whether it could have charged the offense with greater particularity." *Id.* at 338, 493 A.2d 1062.

Appellant's indictment charged him with violating art. 27, § 467A. Although the indictment did not explicitly state that the videocassettes had sounds or images transferred or stored on them, we hold that it sufficiently tracked the language of the statute to place appellant on notice of the crime with which he was charged. Similarly, although the indictment did not mention the "knowingly" requirement, the Court reaffirmed in *Jones* that *scienter* can be implied from a fair reading of the language of the indictment.

Appellant's argument challenging the sufficiency of the indictment therefore hinges upon whether the indictment's use of the word "videocassettes" was constitutionally sufficient. We hold that it was not necessary for the charging document to list, by title, each of the videocassettes that were seized in order to put appellant on notice of the charge before him. The prevailing view is well expressed in 41 Am.Jur.2d *Indictments and Informations,* § 149:

"When it is necessary to refer to real or personal property in an indictment, that property must be described with sufficient particularity to enable the accused and the court to determine what property is referred to, and to enable the jury to decide whether the property proved is the same as the property alleged. However, it is not a valid objection that the description of the property is broad enough to include more than one specified article as long as the language used is sufficient to enable the defendant to use a judgment on the accusation in bar of any subsequent prosecution. Thus, the failure to describe personal property with great particularity or to describe every mark and means of identifying it does not invalidate the indictment. Any de-

scription that makes the subject property clear as a matter of common understanding is sufficient, especially if the property description is not an essential element of the offense."

*See also* 42 C.J.S. *Indictments and Informations,* § 108; Wharton, *Criminal Procedure,* § 255, p. 105 (1990).

Appellant was charged with one count of violating art. 27, § 467A(b) by virtue of selling, renting, or possessing for sale or rent certain "videocassettes." It is not important how many, or which, such videocassettes were involved. Appellant was fairly put on notice of the nature of the charge; which videocassettes were sold, rented, or possessed is a matter of evidence. The indictment properly invoked the jurisdiction of the court and placed appellant on notice of the charge against him.

### THE SEARCHES

■ Appellant complains that Judge Close erred in concluding that (1) the warrant issued for The Depot was supported by probable cause, (2) appellant had no standing to contest the seizures at the Edgewood property, and (3) the seizures were not invalid because of Federal preemption.

We have already concluded that § 467A(b) is not preempted by the Federal Copyright Act. There is no need for us to describe in this Opinion all of the facts presented in the application for the search warrant. They more than sufficed to establish probable cause to believe that violations of § 467A(b) were occurring at The Depot—that unauthorized copies were being made of legitimate videocassettes and that the unauthorized copies did not contain the information required by that statute.

With respect to appellant's contention that he had standing to challenge the seizure at 3011 Pulaski Highway, we agree with Judge Close's Opinion and Order that appellant lacked the requisite standing.

■ To have a Fourth Amendment right, an individual must have a reasonable expectation of privacy with respect to the place searched or the item seized. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Appellant clearly had no ownership or possessory interest in the place searched. Although appellant arguably had a possessory interest in the seized videocassettes, given the manner in which those videocassettes were displayed, he did not have a reasonable expectation of privacy in them.

■ The only person who can legitimately complain about an alleged unlawful search is the individual whose own reasonable expectations of privacy have been violated. *Rakas v. Illinois,* 439 U.S. 128, 143–44, 99 S.Ct. 421, 430–31, 58 L.Ed.2d 387 (1978).

Heather D & M was a place of business to which the public was invited in order to purchase or rent videocassettes. The videocassettes were apparently displayed in the public area so that customers could observe them and pick which ones they wanted to buy or rent. Under that circumstance, appellant could have no reasonable expectation of privacy with respect to the place searched. Similarly, because the videotapes were originally seized under a Writ of Execution, it would be customary for others to handle the property. For these reasons, we hold that appellant lacked standing to challenge the search at 3011 Pulaski Highway.

## *SUFFICIENCY OF EVIDENCE*

■ Appellant urges that the evidence, presented through proffered testimony, photographs, and other exhibits, failed to show that any of the videotapes admitted into evidence had, in fact, been copied from another tape. That is simply not the case. Sergeant Wright's proffered testimony was that, after observing other customers renting or buying videocassettes from The Depot, he rented one. Upon playing the videotape, he noticed that it contained no introductory credits, title or copyright information, or customary FBI warning against unauthorized copying. He then rented a videocassette for the

same work from another store and noticed that that videocassette contained all of the requisite information. Wright later discovered in the basement of The Depot 21 videocassette players and five television monitors. He observed that the VCRs "were connected by cables in such a way as to permit copies of a tape being played in one to be recorded by another."

The test for sufficiency of the evidence in a non-jury trial is " 'whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged.' " *Schwartz v. State,* 103 Md.App. 378, 385, 653 A.2d 958, *cert. denied,* 339 Md. 168, 661 A.2d 701 (1995) (quoting *Thomas v. State,* 2 Md.App. 502, 507, 235 A.2d 777 (1967)). The evidence recounted above more than suffices.

### *FORFEITURE*

■■■ Lastly, appellant contends that the order of forfeiture without a hearing or trial was invalid under the Eighth Amendment and Article 25 of the Maryland Declaration of Rights, in addition to a taking of property without just compensation under the Fourteenth Amendment.

Section 467A(e) provides that "[a]ny article produced in violation of this section and any equipment, or components used in the production thereof, shall be subject to forfeiture and destruction by the appropriate law enforcement agency."

Appellant complains that the trial court issued a summary punishment forfeiture without any evidentiary proof. The State, on the other hand, asserts that this issue is "not deserving of extended discussion" because appellant agreed that all of the evidence seized was properly subject to forfeiture. The State is correct.

We note the following colloquy involving the forfeiture issue:

"The Court: We have had a conversation in chambers and I understand that there have been continuing negotiations,

and my understanding is that we will continue to still proceed on a not guilty statement of facts, with the statement of facts already having been read into the record, but that neither side will be submitting any additional briefs or, in essence any argument on the merits, and that in exchange for that the State is not seeking any jail time to serve, and will agree that is, in essence, just one count per person for the possible penal sanctions. . . .

. . . . .

Is this the understanding of the State?

[Prosecution]: For seizure of everything that the State has seized now from—

The Court: From where? I know there are a couple of stores.

[Prosecution]: From everything that the State Police seized in the raids on June the 18th from The Depot at 1634 Pulaski Highway and everything that the Sheriff's Department removed from 3011 Pulaski Highway on July the 8th, 1993.

[Defense Counsel]: Save and except for the two surveillance rental cameras and stuff, it is the surveillance company's. There are two.

. . . . .

The Court: Okay, and [appellant], you have also had an opportunity to discuss this with counsel?

[Appellant]: Yes, sir.

The Court: You understand everything that is going on here?

[Appellant]: Yes

The Court: Okay, and so we are just proceeding on this one count with that agreed upon sentence. Do you understand?

[Appellant]: Yes, sir."

The record reflects that appellant waived the right to have an evidentiary hearing and trial on the issue of forfeiture in a plea bargain exchange for an agreed-upon sentence. By

**134**

accepting the fruits of the plea bargain, appellant cannot now complain to this Court that he suffered an excessive fine, or that his property was unjustly taken without due process. Appellant was informed of his rights, and intelligently and knowingly waived them. We hold that the forfeiture was proper.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.