# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 6, 2013

## STATE OF TENNESSEE v. ROY PIERSON JR.

**Appeal from the Criminal Court for Shelby County**
**No. 1101635     Lee V. Coffee, Judge**

—————————————

**No. W2012-02565-CCA-R3-CD  - Filed January 23, 2014**

—————————————

The Defendant-Appellant, Roy Pierson, Jr., was convicted by a Shelby County jury for possession of one hundred or more recordings that did not clearly and conspicuously disclose the name and address of the manufacturer in violation of Tennessee Code Annotated section 39-14-139 (Supp. 2009).  He received a sentence of twenty-five months in the workhouse to be served at thirty percent.  On appeal, the Defendant argues: (1) the trial court improperly denied the Defendant's motion to dismiss the indictment for lack of subject-matter jurisdiction; (2) the evidence is insufficient to sustain his conviction; and (3) the trial court improperly denied his motion to suppress evidence seized from his business.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Barry W. Kuhn, on appeal, and Timothy J. Albers and Lawrence Morton, at trial, for the Defendant-Appellant, Roy Pierson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilbur, Assistant Attorney General; Amy P. Weirich,  District Attorney General; and Kirby May, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

In August 2009, an investigation was launched against Roy Pierson, Jr., the Defendant, for operating a business selling counterfeit DVDs and CDs at a flea market in Memphis, Tennessee. The Defendant was subsequently indicted by the Shelby County Grand

Jury for possession of over one hundred recorded devices that did not clearly and conspicuously disclose the name and address of the manufacturer.

**Pretrial Motions.** Prior to trial, the Defendant filed a motion to dismiss the indictment for lack of subject-matter jurisdiction and a motion to suppress evidence seized from his business. Following a hearing, the trial court denied both motions.

At the hearing on the motion to dismiss, the Defendant argued that the trial court lacked subject-matter jurisdiction because Tennessee Code Annotated section 39-14-139 was preempted by the federal Copyright Act of 1976. The Defendant maintained that the "victim" in this case is the copyright owner rather than Tennessee consumers, and as such, the case should be tried in federal court pursuant to the Copyright Act. The State disagreed, and argued that the statute was amended in 2009 to "accommodate and follow some of the case law . . . regarding the federal preemption . . . of the state statutes under copyright." The State noted the lack of Tennessee authority on the subject, and cited several cases from other jurisdictions interpreting statutes nearly identical to the Tennessee statute at hand. The State maintained that contrary to the Defendant's assertions, the purpose of the statute is to protect Tennessee consumers from deceptive recordings in the commercial market.

Following the hearing, the trial court concluded that the statute was constitutional and denied the motion. The court characterized the statute as a consumer protection statute, reasoning that the State Legislature passed the statute "in order to provide consumer protection for Tennessee citizens and residents." The court reasoned that without such a statute in place, Tennessee would be left without protection for its citizens in many cases because federal courts require a "certain monetary threshold" before prosecuting a case. The trial court also noted the lack of Tennessee state cases concerning the issue raised by the Defendant and expressed strong hesitation as a trial court judge to declare a state statute unconstitutional. Based on those reasons, the court denied the motion to dismiss.

At the hearing on the motion to suppress, Sergeant Dee Bowling of the Shelby County Sheriff's Office testified that at the time of the offense, he was assigned as an investigator to the Alert Unit, a specialized unit that investigates organized retail thefts and counterfeit groups. He testified that in August 2009, he was approached by a citizen informant about a counterfeit DVD and CD business operating in a flea market in Memphis, Tennessee. The informant, whom Sergeant Bowling confirmed was not involved in any criminal investigation, agreed to cooperate in the investigation but wanted to remain anonymous. The next day, Sergeant Bowling and the informant went to the flea market to verify that the Defendant was operating a business and to set up a controlled buy. Sergeant Bowling checked the informant for money and contraband prior to the buy, and then gave the

informant $85.00 to purchase DVDs from the Defendant. The informant returned with 17 DVDs and CDs purchased from the Defendant, none of which had the proper labeling.

Approximately one week later, Sergeant Bowling returned to the flea market with several other officers and "set up surveillance." Sergeant Bowling observed numerous customers going into and out of the Defendant's booth and saw the Defendant walk to his car behind the booth several times. The booth had a sign that read "Under Construction" and the Defendant's car had a decal that read "Under Construction Production." The officers entered the Defendant's booth, identified themselves as police officers, and told the Defendant they were investigating whether he was selling counterfeit DVDs. The officers observed several tables "with notebooks and folders where [the Defendant] had movie labels and – and pictures where you could pick different movies you wanted." The officers also saw a three-CD tower used for burning DVDs. Sergeant Bowling testified that he did not obtain a search warrant because the Defendant's booth was "wide open to the public" and had customers in and out. He further explained that he could see "bins" of DVDs and a burner from outside of the booth.

Sergeant Bowling informed the Defendant that he was under arrest and advised him of his <u>Miranda</u> rights. The Defendant made several statements to the officers and then indicated that he did not have anything further to say. The officers seized all of the DVDs, CDs, and burners inside of the booth and seized the Defendant's car, which contained more DVDs and folders. Sergeant Bowling testified that it was "obvious" that the DVDs and CDs were counterfeit and that the additional materials in the Defendant's car were observed through the car windows and were in plain view. The officers seized a total of 1,957 DVDs; 1,625 CDs; and $455 from the Defendant's booth and car. All of the items were secured in a warehouse until an investigator with the Motion Picture Association of America "took inventory."

Following the hearing, the trial court made the following findings:

[Sergeant Bowling] received information that the Defendant was, in fact, committing crimes . . . Sergeant Bowling told the Court that he could see inside this place from outside where he was situated, that he saw these tables, that he saw these tubs, that he saw equipment that was used for burning CDs and DVDs, that he had been on this unit – this ALERT Unit since 2005, some four years at the time that this offense was, in fact, investigated, and that he had been working a total of five years, and that he knew immediately that this is, in fact, an illegal operation in which tapes and CDs were being made and were being burned. So he had the authority under Tennessee Code Annotated [section 40-7-103] to make this arrest without a warrant because, in fact, he

-3-

did have reason to believe that a felony was, in fact, being committed in this community.

He used a citizen informant, did not have to corroborate the information but he did, in fact, corroborate the information, even though he is not required to do so, when he went in the next day with the citizen informant and conducted a controlled buy. . . . This place of business was, in fact, open and [the Defendant] was openly and – openly and brazenly selling this stuff illegally in this community.

Based on its findings of fact, the court concluded that the Defendant was lawfully arrested and the items seized from the Defendant's booth and car were admissible against him. Consequently, the court denied the motion to suppress.

**Trial.** Sergeant Dee Bowling testified that in August 2009, a citizen informant alerted him to a possible counterfeit operation at the Triple S Flea Market in Memphis, Tennessee. The following day, Sergeant Bowling accompanied the informant to the flea market to confirm that the Defendant was operating a business and to set up a controlled buy. The informant purchased seventeen DVDs and CDs from the Defendant, all of which Sergeant Bowling examined and determined to be counterfeit based on the lack of labeling and poor quality of the DVDs and CDs.

One week later, Sergeant Bowling returned to the flea market with three other officers of the Alert Unit to investigate the Defendant's operation further. After watching the Defendant operate his business for several hours, the officers entered the booth and observed several tubs containing DVDs and CDs, folders and notebooks spread out over four or five tables with movie titles listed, and electronic equipment used for burning DVDs. Sergeant Bowling testified that he and the other officers approached the Defendant, identified themselves as police officers, and told him that they were investigating whether he was selling counterfeit DVDs and CDs. Sergeant Bowling testified that he informed the Defendant that he was under arrest, advised him of his Miranda rights, and seized all of the items in the booth. The officers also seized the Defendant's car, which contained additional DVDs and folders belonging to the Defendant. Sergeant Bowling recalled that the Defendant had "roughly three thousand DVDs and CDs" at his business when he was arrested, all of which were "clearly counterfeit."

John Hollie, a private investigator and former police officer, testified that he was contacted by Sergeant Bowling about this case and asked to verify whether the materials were counterfeit. He testified that he is trained in detecting counterfeit DVDs and CDs and has worked with the Motion Picture Association of American ("MPAA") for fourteen years

and Recording Industry Association of America ("RIAA") for seven years. He explained that legitimate disks have an IFPC number, which is like a serial number, stamped on the inner circle of the disk that is used to identify that disk. He further explained that legitimate disks have labeling on them that indicate the copyright date and provide identifying information about the manufacturer. Counterfeit disks, on the other hand, lack the proper labeling and have track marks or burn marks on the back of the disk as a result of the burn process.

Mr. Hollie testified that he was contacted by Sergeant Bowling to "do an inventory" of the items seized from the Defendant to "verify that they [were], in fact, counterfeit." He individually examined seven hundred and fifty discs that had been confiscated and determined that they were all counterfeit. He stated that the discs had track marks on the back and lacked the proper identifying information like the copyright or manufacturer's information. He estimated that the total value of the DVDs and CDs seized was thirteen dollars and fifty cents ($13.50); however, if the disks had been legitimate, he estimated that the DVDs would have been worth $23,000 and the CDs would have been worth $20,000.

Based on the testimony and evidence presented, the jury convicted the Defendant as charged in the indictment. Following the sentencing hearing, the trial court found that the Defendant was a Range I, standard offender and imposed a sentence of twenty-five months at thirty percent to be served in the Shelby County Division of Correction. He also ordered the Defendant to pay $1,200 in restitution to the MPAA.

## ANALYSIS

On appeal, the Defendant raises three issues for our consideration: (1) whether the trial court properly denied the Defendant's motion to dismiss for lack of subject-matter jurisdiction; (2) whether the trial court properly denied the Defendant's motion to suppress; and (3) whether the State presented sufficient evidence to sustain the Defendant's conviction. Upon review, we affirm the judgment of the trial court.

**Motion to Dismiss.** As the determinative issue in this case, we first address the Defendant's contention that the trial court lacked subject-matter jurisdiction. The Defendant argues that the trial court should have dismissed the indictment against him for lack of subject-matter jurisdiction because the Tennessee statute at issue is preempted by the federal Copyright Act of 1976. The State responds that statute is not preempted because it contains an "extra element" of consumer protection for Tennessee residents, which removes it from the ambit of the Copyright Act. We agree with the State.

Congress has the power to preempt state law pursuant to the Supremacy Clause of the United States Constitution, which states that the laws of the United States "shall be the

supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or the Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Under the Supremacy Clause, "a law enacted by Congress may preempt an otherwise valid state law, rendering it without effect." Lake v. Memphis Landsmen, LLC, 405 S.W.3d 47, 55 (Tenn. 2013) (citing Leggett v. Duke Energy Corp., 308 S.W.3d 843, 853 (Tenn. 2010).

"Whether a state statute or common law cause of action is preempted by federal law is a question of law [that appellate courts] review de novo." Leggett, 308 S.W.3d at 851 (citing Friberg v. Kansas City S. Ry. Co., 267 F.3d 439, 442 (5th Cir. 2001)). The Tennessee Supreme Court has explained that the preemption analysis is guided by two fundamental principles:

> First, no matter what type of preemption is at issue, "the purpose of Congress is the ultimate touchstone. Wyeth v. Levine, 555 U.S. 555, 565 (2009) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)). Second, in conducting any preemption inquiry, courts must "start with the assumption that the historic police powers of the States were not to be superseded by [federal law] unless that was the clear and manifest purpose of Congress" – particularly when the federal law in question pertains to "a field in which the States have traditionally occupied." Id. (quoting Medtronic, 518 U.S. at 485) (internal quotation marks omitted).

Lake, 405 S.W.3d at 56.

17 U.S.C. § 301 is entitled "Preemption with respect to other laws," and provides in relevant part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent jurisdiction of any civil action arising under the common law or statutes of any State.

17 U.S.C. § 301(a). In other words, "[f]or preemption to apply, the state law claim must fit the 'subject matter requirement' and the 'general scope requirement.'" Corp. Catering, Inc. v. Corp. Catering, LLC, No. M1997-00230-COA-CV, 2001 WL 266041, at *4 (Tenn. Ct. App. Mar. 20, 2001). To determine whether a state law is preempted by the federal

Copyright Act, courts apply a two-part test derived from the language of § 301. "First, they determine whether the state claim falls within 'subject matter of copyright as specified in sections 102 and 103.' Second, they determine whether the state claim protects rights equivalent to any of the exclusive rights of federal copyright." Id. (citing Daboub v. Gibbons, 42 F.3d 285, 288-89 (5th Cir. 1995)); see also, e.g., Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 453 (6th Cir. 2001).

As an initial matter, we note that Tennessee state courts have yet to address § 301 and its preemptive impact on criminal prosecutions under Tennessee Code Annotated section 39-14-139. Nevertheless, it is clear from the language of § 301 as well as relevant case law in other jurisdictions that § 301's preemptive force applies equally to both civil claims and criminal prosecutions. See, e.g., People v. Williams, 920 N.E.2d 446, 457 (Ill. 2009) ("Nearly every, if not every, court nationwide that has considered preemption under § 301 has either expressly or impliedly concluded that preemption was intended to apply to state criminal prosecutions."); see also, e.g., People v. Borriello, 588 N.Y.S.2d 991 (Sup. 1992) (applying the two-pronged inquiry to New York's criminal Label Law). Thus, we conclude that the two-pronged inquiry under § 301 is the proper test to apply in this context to determine whether the statute at issue has been preempted by the federal Copyright Act.

In the present case, the Defendant was indicted under Tennessee Code Annotated section 39-14-139(d) (Supp. 2009), which provides:

> It is unlawful for any person to, for commercial advantage or private financial gain, knowingly advertise, offer for sale, sell, rent or transport, cause the sale, resale, rental or transportation of, or possess for any of these purposes a recording if the outside cover, box, jacket or label of the recording does not clearly and conspicuously disclose the actual name and address of the manufacturer.

There is no dispute that the "recordings" in section 39-14-139(d) are within the scope of the Copyright Act. Section 102(a)(6) and (7) provide copyright protection to "original works of authorship fixed in any tangible medium of expression" including "motion pictures and other audiovisual works" and "sound recordings." See 17 U.S.C. § 102. Thus, the crux of the issue turns on the "equivalency" prong and the rights set out in § 106.[1]

---

[1] Section 106 provides the copyright holder with the exclusive rights:
(1) to reproduce the copyrighted work in copies or phonorecords;
(2) to prepare derivative works based upon the copyrighted work;
(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or

(continued...)

To determine whether a state claim is "equivalent" to federal copyright law rights, most courts, including those in Tennessee, employ an "extra element test," which asks whether the state claim requires an extra element beyond those required for copyright infringement. See Ritchie, 395 F.3d at 287 n.3 (noting that most circuits, including the 6th Circuit, apply the "extra element test" to determine equivalency); Corp. Catering, Inc., 2001 WL 266041, at *4 (discussing the "extra element test"). "Equivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights." Wrench, 256 F.3d at 456 (citing Harper & Row, 753 F.2d at 200). On the other hand, "if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption." Wrench, 256 F.3d at 456 (citing Harper & Row, 753 F.2d at 200; Rosciszewski v. Arete Associates, Inc., 1 F.3d 225, 230 (4th Cir. 1993); National Car Rental Sys., Inc. v. Computer Assocs. Intn'l, Inc., 991 F.2d 426, 431 (8th Cir. 1993)). The focus of the "extra element test" is whether the extra element renders the nature of the action "qualitatively different" from a copyright infringement claim. Wrench, 256 F.3d at 456. "The existence of an extra element precludes preemption only where the element changes the nature, rather than the scope, of the action." Stromback v. New Line Cinema, 384 F.3d 283, 301 (6th Cir. 2004).

Approximately 45 states have labeling laws similar to Tennessee Code Annotated section 39-14-139(d). See Williams, 920 N.E.2d at 467 (citing M. Coblenz, Intellectual Property Crimes, 9 Albany L.J. Sci. & Tech. 235, 269 n.165 (1999)). Several jurisdictions have addressed challenges to their labeling laws in recent years and have sustained laws nearly identical to section 39-14-139(d) after applying the extra element test. We find these cases, along with a review of the legislative history of § 301, to be helpful in guiding our own analysis.

In Borriello, the defendant challenged a New York labeling law that made it illegal to sell, resell, or rent "a recording the outside cover, box or jacket of which does not clearly and conspicuously disclose the actual name and address of the [manufacturer and performer or artist]." 588 N.Y.S.2d at 996. The New York court upheld the state statute and reasoned:

---

[1](...continued)
other transfer of ownership, or by rental, lease, or lending;
(4) in the case of literary, musical, dramatic, or choreographic works, pantomimes, and motion pictures and other audiovisual work, to perform the copyrighted work publicly; and
(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly.

17 U.S.C. § 106.

The focus of [the state law] is on labelling [sic] or packaging . . . This statute does not require the defendant to infringe the rights of the copyright owner. This statute can be violated even if the transferor has permission and authority to sell the recording from the copyright owner if the labels or packages are deceptive. The required element is that the cover, box or jacket does not clearly and conspicuously disclose manufacturer information. This is an "extra element" that makes the statute "qualitatively" different from a copyright infringement claim . . . Although distribution is an element of this statute, this is an additional element which takes it out of a copyright infringement statute.

. . .

Furthermore, the right protected in a copyright infringement claim is the owner[']s property rights in his intellectual endeavors, while [the state law] is aimed at protecting the rights of consumers.

Id. Based on this reasoning, the court concluded that state labeling law is not preempted by the Copyright Act. See also, State v. Awawdeh, 863 P.2d 965, 968 (Wash. Ct. App. 1994) (adopting the rationale of Borriello and concluding that the Washington labeling law is not preempted by the Copyright Act).

Similarly, in Hicks v. State, a Maryland court reached the same conclusion with respect to its own criminal labeling law. 674 A.2d 55 (Md. Ct. Spec. App. 1996). The court reasoned that the rationale of Borriello and other cases upholding state labeling laws is in line with the legislative history of § 301 and United States Supreme Court precedent. The court noted that in the context of federal patent law, for example, the Supreme Court has indicated that while a State may not prohibit the copying of an item not protected by a Federal patent or copyright, "a State may, in appropriate circumstances, require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source . . ." 674 A.2d at 62 (quoting Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 232 (1964)). Thus, the court agreed with the rationale set out in Borriello, and concluded that Maryland's labeling law is not preempted by the Copyright Act.

We find the reasoning of these cases to be persuasive, especially in light of the legislative history of § 301. The bill as initially drafted included a non-exhaustive list of examples of "principal areas of protection that preemption would not prevent States from protecting," including "deception trade practices such as passing off and false representation." See H.R. Rep. No. 94-1476, 94th Cong., 2d Sess. 131-32 (1976), reprinted

in 1976 U.S.C.C.A.N. 5659, 5748; see also, S. Rep. No. 94-473, 94th Cong., 1st Sess. 1975, 1975 WL 370213 (Leg. Hist.).[2] The Committee Report further explained:

> The last example listed in clause (3) - "deceptive trade practices such as passing off and false representation"– represents an effort to distinguish between those causes of action known as "unfair competition" that the copyright statute is not intended to preempt and those that it is. *Section 301 is not intended to preempt common law protection in cases involving activities such as false labeling, fraudulent representation, and passing off even where the subject matter involved comes within the scope of the copyright statute.*

H.R. Rep. No. 94-1476, 132 (emphasis added). The specific examples in § 301(b)(3) were deleted on the floor of the House; however, courts and commentators agree that the "amendment that caused such deletion was not intended substantively to alter Section 301(b)(3) as regards [those examples originally included]," but rather to address the concerns of some House members about inclusion of the tort of misappropriation to the list of non-preempted causes of action. National Car Rental System, Inc., 991 F.2d at 433 (quoting 1 Nimmer on Copyright § 1.01[B], at 1-22); see also, Hicks, 674 A.2d at 61 ("It is clear from the debate [on the House floor] that the intent was not to circumscribe the exemption for false labeling, etc., but rather to address the concern of the Justice Department about the language dealing with 'misappropriation,' which had too close a nexus to infringement.").

Based on the case law and legislative history discussed above, we conclude that Tennessee Code Annotated section 39-14-139(d) is not preempted by the federal Copyright Act. The state statute focuses on labeling and packaging rather than the rights of the copyright owner. Indeed, the statute can be violated whether or not the defendant infringes upon the rights of the copyright owner. Although distribution is an element present in both the Copyright Act and in this statute, the label requirement of section 39-14-139(d) is an additional element that renders this statute "qualitatively different" from a copyright infringement claim. Moreover, and contrary to the Defendant's argument, we believe that the aim of the statute is consumer protection, an area of legislation typically reserved to the state. See Borriello, 588 N.Y.S.2d at 996 (concluding that the New York labeling law is a consumer protection law because it was enacted "to protect the public from purchasing under

---

[2] As originally drafted, § 301(b)(3) provided that preemption does not apply to "activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106, including rights against misappropriation not equivalent to any of such exclusive rights, breaches of contract, breaches of trust, trespass, conversion, invasion of privacy, defamation, and deception trade practices such as passing off and false representation." S. Rep. No. 94-473, 94th Cong., 1st Sess. 1975, 1975 WL 370213 (Leg. Hist.).

a false belief"); Awawdeh, 864 P.2d at 968 ("The federal copyright act protects an owner's property right . . . [while] the rights protected by the [state labeling law] are those of the consumer."). Therefore, we conclude that Tennessee Code Annotated section 39-14-139(d) does not set out rights "equivalent" to any of the exclusive rights within the general scope of copyrights, and is not preempted by the Copyright Act.

**II**. **Motion to Suppress.** The Defendant asserts that the trial court should have suppressed the evidence seized from his flea market booth because the police officers conducting the search and seizure did not have a warrant or probable cause. The Defendant maintains that the officers arrested the Defendant based in part upon "stale information" provided by the citizen informant one week prior to the Defendant's arrest and that at the time of the arrest, the officers did not know that the items seized were actually counterfeit. The State responds that the officers observed the Defendant commit a felony in their presence, and therefore had probable cause to arrest the Defendant and seize evidence of the offense at that time. We agree with the State.

An appellate court may consider the proof presented at the suppression hearing and the trial when determining whether the trial court properly denied a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998). It is well-established that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The Tennessee Supreme Court explained this standard in Odom:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.

Id. However, this court's review of a trial court's application of the law to the facts is de novo with no presumption of correctness. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); (citing State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)). The defendant bears the burden of showing that the evidence preponderates against the trial court's findings. Odom, 928 S.W.2d at 23; Yeargan, 958 S.W.2d at 629.

The Defendant's motion to suppress was premised upon the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution, which both

protect against unreasonable searches and seizures.[3] "[U]nder both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." Yeargan, 958 S.W.2d at 629 (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn. 1996)). "A full-scale arrest supported by probable cause is, of course, an exception to the warrant requirement." State v. Echols, 382 S.W.3d 266, 278 (Tenn. 2012) (citing State v. Hanning, 296 S.W.3d 44, 48 (Tenn. 2009)); see also, T.C.A. § 40-7-103(a) (permitting an officer to conduct a warrantless arrest where "a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested has committed the felony").[4] Probable cause requires more than "mere suspicion," but does not require "absolute certainty." Yeargan, 958 S.W.2d at 637 (citing Grey v. State, 542 S.W.2d 102, 104 (Tenn. Ct. Crim. App. 1976)). "Probable cause for an arrest without a warrant exists if, at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are 'sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." State v. Bridges, 963 S.W.2d 487 (Tenn. 1997) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

In the present case, the trial court denied the Defendant's motion to suppress the evidence seized. The court reasoned that the officers did not need a warrant to search the Defendant's flea market booth because the booth was a place "open to the public . . . for which there is no reasonable expectation of privacy." Further, the court concluded that the officers had the authority to arrest the Defendant without a warrant pursuant to Tennessee Code Annotated 40-7-103(a) because they had "reason to believe" the Defendant was committing a felony, and had the authority to seize evidence inside of the booth at that time. Based on our review of the record, the evidence does not preponderate against these findings.

Sergeant Bowling testified that the Defendant's booth was an open-air facility that was open to the public. He set up surveillance on the day of the arrest and observed numerous customers entering and exiting the booth in the hours leading up to the officers' search of the booth. He also saw the Defendant walk to his car from the booth several times during the course of his surveillance. He could see bins and tubs of discs from outside of the

---

[3] The Defendant's motion to suppress is not included in the record for our review. We glean what information we have about the motion from the transcript of the September 10, 2012 suppression hearing.

[4] Tennessee courts "have not distinguished between the statutory term 'reasonable cause' and the more traditional term 'probable cause.'" Echols, 382 S.W.3d at 278 (citing State v. Melson, 638 S.W.2d 342, 350 (Tenn. 1982)).

booth, and observed similar items in the Defendant's car by looking through the windows of the car. Sergeant Bowling clarified that the Defendant's arrest was based upon the officers' personal observations on the day of the arrest, and was not based upon the information provided to him by the citizen informant. He estimated that the Defendant had "roughly three thousand DVDs and CDs" in his possession at that time, and stated that based upon his training and experience, it was "obvious" to him that these discs were counterfeit and that Defendant was committing a felony. The trial court accredited the testimony of Sergeant Bowling, and concluded that the arrest was justified. We agree with the trial court's conclusion that the officers had reasonable cause based upon their observations to believe the Defendant was committing a felony. Therefore, the Defendant's arrest was justified pursuant to Tennessee Code Annotated 40-7-103(a).

Additionally, the seizure of the items within the booth was justified pursuant to the plain view doctrine. "The 'plain view' exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be." Washington v. Chrisman, 455 U.S. 1, 5-6 (1982) (citing Coolidge, 403 U.S. at 466; Harris v. United States, 390 U.S. 234, 236 (1968)). The plain view doctrine is applicable when (1) the object seized was in plain view, (2) the viewer had a right to be in the position to view the object, and (3) the incriminating nature of the object was immediately apparent. State v. Cothran, 115 S.W.3d 513, 524-25 (Tenn. Crim. App. 2003). The trial court concluded, and we agree, that the Defendant's booth was a place "open to the public" with "no reasonable expectation of privacy." Indeed, the Defendant does not dispute this characterization on appeal, nor assert that the officers lacked authority to enter his booth. Once inside of the booth, officers observed bins and tubs filled with discs that were "clearly counterfeit." Sergeant Bowling testified that it was "obvious" that the items inside of the booth were illegal and that the officers seized them because they were "part of the illegal operation." Based on this testimony, we agree with the trial court that the seizure of the items was justified. The Defendant is not entitled to relief on this issue.

**III. Sufficiency of the Evidence.** The Defendant argues that the evidence is insufficient to support his conviction under Tennessee Code Annotated section 39-14-139(d). Specifically, he asserts that the State failed to prove that the Defendant possessed more than one hundred recordings that did not disclose the name and address of the manufacturer. The State disagrees, and argues that the evidence presented proved that the Defendant possessed at least 750 recorded devices that did not disclose the name and address of the manufacturer. Upon review of the record, we agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958

S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this Court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This Court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

Here, the Defendant was convicted for the unlawful possession of recorded devices in violation of Tennessee Code Annotated section 39-14-139(d). The indictment stated that the Defendant "did unlawfully and knowingly possess for commercial advantage or private financial gain, over one hundred or more recordings, upon which the outside cover, box, jacket or label of the recording did not clearly and conspicuously disclose the actual name and address of the manufacturer." See T.C.A. § 39-14-139(d).[5] The Defendant maintains that the State failed to prove that the Defendant possessed more than one hundred discs without the proper labeling, pointing to the testimony of Sergeant Bowling for support. In his brief, the Defendant asserts that Sergeant Bowling only testified that three discs lacked proper labeling and the State failed to produce further evidence that the Defendant possessed more than one hundred recorded devices without the proper labeling. We are perplexed by this argument given our review of the record.

---

[5] Possession of "one hundred (100) or more recordings" constitutes a Class D felony. T.C.A. § 39-14-139(e)(1)(A).

Sergeant Bowling testified that the Defendant had "roughly three thousand DVDs and CDs" in his possession when he was arrested. He further testified that he arrested the Defendant that day based on his own personal observations because the discs were "clearly counterfeit." Mr. Hollie testified that he conducted a two-day inventory of all of the discs seized from the Defendant's booth and car. He personally inspected 750 discs to determine whether they were counterfeit, and confirmed that none of them disclosed the manufacturer's name and address. The State also introduced photographs and physical evidence of the items seized from the Defendant's booth, totaling well over one hundred discs for the jury to review. Based on this evidence, we conclude that a rational juror could have found beyond a reasonable doubt that the Defendant possessed more than one hundred DVDs and CDs that do not disclose the name and address of the manufacturer. The Defendant is not entitled to relief on this issue.

## CONCLUSION

Based upon the foregoing authority and analysis, we affirm the judgment of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE